Michael **LINDSEY**, Petitioner-Appellant,

v.

Fred **SMITH**, Commissioner, Alabama Department of Corrections, J.D. White, Warden Holman Unit, Respondents-Appellees.

No. 86–7162.

United States Court of Appeals, Eleventh Circuit.

June 12, 1987.

Louis E. Braswell, David A. Bagwell, Mobile, Ala., for petitioner-appellant.

John Gibbs, William Whatley, Ed Carnes, Asst. Attys. Gen., Montgomery, Ala., for respondents-appellees.

Before TJOFLAT, VANCE and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

Michael Lindsey, an Alabama prisoner under sentence of death, appeals the denial by the district court of his petition for habeas corpus. The district court denied relief on grounds that several of appellant's claims are procedurally barred and that the remaining claims are without merit. We conclude that appellant has not demonstrated that he is entitled to habeas relief. Accordingly, we affirm.[1]

## I. BACKGROUND

Appellant was convicted in 1982 for the December 1981 murder of Rosemary Rutland, a 63-year-old widow. Mrs. Rutland was killed in her home by stabbing and a pistol shot. She had been gagged and her hands bound behind her; her house was ransacked. Appellant, a neighbor of Mrs. Rutland, was arrested the morning following the murder after he attempted to use credit cards belonging to the victim.

Appellant's first trial was declared a mistrial after the jury twice informed the judge that it could not reach a verdict. On retrial, appellant's wife and other members of his household testified that on the evening of the murder appellant made a series of trips to bring household items into their home, but that he refused to state where he had obtained the merchandise. These items were identified at trial as belonging to the victim. An eleven-year-old boy who lived in appellant's house testified also that he saw appellant driving the victim's car on the night of the murder and that he saw a pistol stuffed into appellant's pants. The only evidence discovered inside the victim's home to link appellant to the crime was his palm print on an air pump found in an open suitcase in a bedroom.

The most significant evidence against appellant at the second trial was testimony by Officer Hubert Bell that appellant had given an unrecorded statement in which he admitted killing Mrs. Rutland. Bell stated that appellant confessed to him immediately following a recorded session during which appellant was questioned by several officers. He testified that he and appellant were awaiting the arrival of guards to transfer appellant back to the jail when appellant admitted that he had killed the

---

1. By separate order entered this day, the opinion previously issued in this case, *Lindsey v. Smith*, No. 86–7162, slip op. 1774 (11th Cir. Feb. 6, 1987), was withdrawn, and this opinion substituted.

victim because she recognized him when she discovered him robbing the house. In the recorded statement given only minutes before, appellant told the officers that "Bob," a man who had given him a ride the day before, had burglarized Mrs. Rutland's home. He said that "Bob" had given him the victim's credit cards and had handed him stolen goods across the fence that separated the victim's yard from appellant's. In the recorded statement, appellant denied any knowledge of the murder. At appellant's first trial, the recorded statement was admitted into evidence, but Bell did not testify and the unrecorded murder confession was not otherwise introduced.

At the second trial the jury found appellant guilty of capital murder and recommended by a vote of eleven to one that the judge sentence him to life in prison. The judge, however, found that "aggravating factors far outweigh[ed] any mitigating factors," and imposed the death penalty.[2] The verdict and sentence were upheld on appeal. *Lindsey v. State,* 456 So.2d 383 (Ala.Crim.App.1983), *aff'd sub nom. Ex parte Lindsey,* 456 So.2d 393 (Ala.1984), *cert. denied,* 470 U.S. 1023, 105 S.Ct. 1384, 84 L.Ed.2d 403 (1985).

After the Alabama Supreme Court set an execution date, appellant's state court trial counsel filed a petition for writ of error coram nobis in Alabama circuit court. The court denied the petition without a hearing and without opinion. The Alabama Supreme Court denied a stay of execution pending appeal to that court, and appellant immediately filed his petition for habeas corpus in federal district court. Only hours before the scheduled execution, the district court entered a stay.

In his petition for federal habeas corpus, appellant asserts numerous claims challenging the constitutionality of various aspects of the guilt phase of his trial, his sentencing, and the Alabama capital punishment statute.[3] After accepting the state's waiver of exhaustion,[4] *see Granberry v. Greer,* —— U.S. ——, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Thompson v. Wainwright,* 714 F.2d 1495 (11th Cir.1983), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2180, 80

---

**2.** The Alabama capital punishment statute provides for a trifurcated process. The jury first determines whether the defendant is guilty of an enumerated capital offense. Ala.Code § 13A–5–43. If the jury finds the defendant guilty of such an offense, the court then conducts a sentencing hearing, after which the jury renders an advisory sentencing verdict. *Id.* §§ 13A–5–45, 46. Finally, based on evidence presented at trial, in the sentencing hearing, in a pre-sentence investigative report, and in any rebuttal to the investigative report, the trial court issues written findings and imposes sentence. *Id.* § 13A–5–47. In deciding the sentence, the court must consider the jury's advisory verdict, but is not bound by it. *Id.*

**3.** Appellant's petition listed eighteen enumerated claims. A careful reading of the petition, however, indicates that the petition in fact raised the following sixteen claims:

(1) Improper exclusion of blacks from the jury through the prosecutor's use of peremptory challenges; (2) improper refusal of the trial court to provide a free transcript of the mistrial prior to retrial; (3) failure of the prosecution to disclose to petitioner prior to trial the existence of the unrecorded confession; (4) double jeopardy due to the improper declaration of a mistrial in appellant's first trial; (5) improper admission into evidence of the uncounseled confessions; (6) absence and/or constitutional invalidity of the follow-

ing statutory aggravating factors: (a) murder during the commission of a burglary; (b) heinousness of the crime; and (c) commission of crime while under "sentence of imprisonment"; (7) improper consideration during sentencing of uncounseled convictions, nonconvictions, and nonstatutory aggravating circumstances; (8) disproportionality of the death sentence in this case; (9) failure of the Alabama trial and appellate courts to conduct a sufficient proportionality review as required by state law; (10) absence of procedures under Alabama capital punishment statute for allocating burdens of proof and persuasion at sentencing; (11) general unconstitutionality of Alabama capital punishment law; (12) electrocution violative of prohibition against cruel and unusual punishment; (13) improper exclusion of juror who expressed reservations against capital punishment; (14) prosecutorial misconduct; (15) ineffective assistance of counsel; and (16) unconstitutional usurpation of legislative power by Alabama courts in their interpretation of the Alabama capital punishment law. (Claims 15 and 16 were raised by the appellant only, and were not joined by his counsel.)

**4.** The record does not disclose the disposition by the Alabama Supreme Court of appellant's appeal from the denial of his state coram nobis petition.

L.Ed.2d 562 (1984), the district court determined that appellant was procedurally barred from asserting several claims that had not been raised at trial or on direct appeal as required by Alabama law.[5] The court dismissed either for failure to state a claim or on the merits all the remaining claims [6] except one alleging ineffective assistance of counsel.[7]

The court subsequently held an evidentiary hearing to determine whether appellant could establish cause under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), to justify federal habeas review of the claims barred by state procedural rules.[8] The court also considered whether appellant's trial counsel was ineffective under the standards established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Based on facts developed at the hearing, the court concluded that cause did not exist to excuse appellant's procedural bar and that the efforts of appellant's trial attorneys did not deprive appellant of his constitutional right to effective assistance of counsel. The court consequently denied the petition.

## II. PROCEDURAL BAR

On appeal, appellant contends that the district court erred in finding him procedurally barred from raising several of his claims and in denying his remaining claims on the merits. On the issue of procedural bar, appellant notes that the state court that denied his coram nobis petition did not clearly indicate that it relied on procedural grounds, but instead simply marked the petition "denied." Thus, he asserts, the claims must be presumed to have been resolved on the merits and therefore properly before the federal habeas court. *See Oliver v. Wainwright,* 795 F.2d 1524, 1528–29 (11th Cir.1986). The state argues that the district court properly found the claims to be procedurally barred despite the failure of the coram nobis court to indicate its reliance on state procedural rules. The state contends that because the Alabama courts have consistently applied their rules of procedural default, the coram nobis court could not have reached the merits of appellant's claims. *See Preston v. Maggio,* 705 F.2d 113, 116–17 (5th Cir. 1983), *cert. denied,* 471 U.S. 1104, 105 S.Ct. 2334, 85 L.Ed.2d 850 (1985).

Whether a state court's denial without opinion of a petitioner's claims should be construed by a federal habeas court as a decision on the merits is a question that this court has agreed to consider en banc. *See Hargrave v. Wainwright,* 804 F.2d 1182 (11th Cir.1986), *reh'g en banc granted,* 809 F.2d 1486 (11th Cir.1987); *see also Reed v. Ross,* 468 U.S. 1, 8 n. 5, 104 S.Ct. 2901, 2906 n. 5, 82 L.Ed.2d 1 (1984) (de-

5. The district court determined that appellant's failure to raise at trial Claims 6, 8, 11, 14, and 16 listed in footnote 3, *supra,* constituted a procedural default under Alabama law. The court determined that appellant was procedurally barred from raising Claims 1 and 3 due to his failure to raise the issues on direct appeal. As noted in footnote 6, *infra,* Claims 11 and 16 were also dismissed on other grounds. One element of Claim 1 (consistent exclusion of blacks from juries in violation of *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)), was dismissed for failure to state a claim. Appellant, however, later amended the petition in an attempt to cure the shortcoming in the allegation found by the district court.

6. Of the claims listed in footnote 3, *supra,* the district court dismissed pursuant to Habeas Rule 4 Claims 9, 10, 11, 12, 13, 16, and 6(a) and (c) either for failure to state a claim upon which relief may be granted or for the absence of sufficiently specific allegations. Based on the

state court record, the court dismissed on the merits Claims 2, 4, and 5.

7. Due to the lack of clarity of the petition, the district court did not rule on Claim 7 listed in footnote 3, *supra.*

8. *Wainwright v. Sykes, supra,* required a showing of cause and actual prejudice before a federal habeas court could review a claim barred by state procedural rules requiring certain claims to be raised at trial. The district court, under the authority of *Griffin v. Wainwright,* 760 F.2d 1505 (11th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1992, 90 L.Ed.2d 672 (1986), also required a showing of cause and actual prejudice to excuse procedural bars arising from state rules requiring certain claims to be raised on direct appeal. Subsequent to the evidentiary hearing, the Supreme Court has clarified that the cause and prejudice standard of *Sykes* applies in both situations. *Murray v. Carrier,* — U.S. —, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

clining to consider effect of state court's failure to rely explicitly on procedural bar). We need not await resolution of this issue, however, to reach a decision in this case.

■ One of the federal habeas claims asserted by appellant was not raised in the state coram nobis proceedings, and thus properly was found by the district court to be procedurally barred. In his fourth amended habeas petition, appellant, who is black, contended that the exclusion of blacks from his jury by the use of peremptory strikes by the prosecutor was part of a broader, consistent pattern of racially based exclusions and therefore constituted an equal protection violation under the standards set forth in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In his state coram nobis petition, however, appellant alleged only that the prosecutor used peremptory strikes to exclude blacks from the jury at his own trial. By failing to allege a systematic exclusion of blacks from juries in trials other than his own, appellant did not state a facially sufficient *Swain* claim. *See id.* at 221–22, 85 S.Ct. at 836; *cf. Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (recognizing equal protection violation based upon racially discriminatory strikes only in defendant's own trial); *Griffith v. Kentucky,* — U.S. —, 107 S.Ct. 708, 710–11, 93 L.Ed.2d 649 (1987) (discussing distinctions between prima facie claims under *Batson* and *Swain); Allen v. Hardy,* — U.S. —, 106 S.Ct. 2878, 2879, 92 L.Ed.2d 199 (1986) (same). The state court's summary denial of the peremptory strike claim contained in the coram nobis petition thus cannot be construed as a decision on the merits of the *Swain* claim that appellant now attempts to assert. *See Allen v. Hardy,* 106 S.Ct. at 2881 n. 4, *aff'g* 577 F.Supp. 984, 987 (N.D.Ill.1984).

Moreover, appellant never raised a facially sufficient *Swain* claim before any state court. At trial, appellant's attorney cited *Swain* in objecting to the prosecutor's peremptory strikes of black venire members, but he did not allege the systematic discriminatory exclusions necessary to establish a *Swain* violation. On direct appeal, appellant did not assert any claim alleging the racially based exclusion of jurors. Under Alabama law, such a failure to raise an available claim either at trial or on direct appeal constitutes a procedural bar to the assertion of the claim in a subsequent collateral proceeding. *E.g., Ex parte Ellison,* 410 So.2d 130, 132 (Ala.1982).

This court has suggested in dicta that a federal habeas court will not consider a particular claim to be procedurally barred on state law grounds unless a state court, either explicitly or implicitly, previously has made that determination. *See Nichols v. Wainwright,* 783 F.2d 1540, 1542 (11th Cir.1986); *Campbell v. Wainwright,* 738 F.2d 1573, 1578 n. 3 (11th Cir.1984), *cert. denied,* — U.S. —, 106 S.Ct. 1652, 90 L.Ed.2d 195 (1986). Such an approach, however, is inconsistent with the practice of the Supreme Court. In *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Court held that a claim asserted by a habeas petitioner was procedurally barred on state law grounds although the claim previously had not been presented in the state courts. *See id.* at 117, 102 S.Ct. at 1566, *rev'g Bell v. Perini,* 635 F.2d 575 (6th Cir.1980); *see also Jenkins v. Anderson,* 447 U.S. 231, 235 n. 1, 100 S.Ct. 2124, 2127 n. 1, 65 L.Ed.2d 86 (1980) ("The applicability of the *Sykes* 'cause'-and-'prejudice' test may turn on an interpretation of state law."); *Rummel v. Estelle,* 445 U.S. 263, 267 n. 7, 100 S.Ct. 1133, 1135 n. 7, 63 L.Ed.2d 382 (1980). *Isaac* thus demonstrates that the considerations of comity that underlie the procedural bar doctrine require federal habeas courts to honor state procedural rules, and not only state courts' procedural rulings. *See Wainwright v. Sykes,* 433 U.S. at 90–91, 97 S.Ct. at 2508; *Murray v. Carrier,* — U.S. —, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986); *cf. Thompson v. Wainwright,* 714 F.2d at 1503–07 (discussing, in context of states' waiver of the exhaustion requirement in federal habeas proceedings, distinctions between the interests of the states as sovereigns and those of the states' courts). Consequently, because the summary denial of the state coram nobis petition cannot be construed as a decision on the merits of the

*Swain* claim, the district court correctly found that appellant was procedurally barred under Alabama law from asserting the claim in his federal habeas proceeding.

■ Furthermore, we conclude that the district court properly found that appellant not establish cause to excuse his failure to raise the *Swain* claim in the state courts. *See, e.g., Sykes, supra.* At an evidentiary hearing, appellant attempted to show cause for his procedural default by demonstrating that his representation at trial and on appeal was so defective as to violate his constitutional right to effective assistance of counsel. *See Murray v. Carrier,* 106 S.Ct. at 2646. In support of this contention, an experienced capital defense attorney testified in appellant's behalf that effective assistance of counsel in a capital case requires raising and preserving every colorable claim at trial and on appeal. Thus, according to this attorney, the failure of appellant's counsel to raise and preserve all colorable claims constituted ineffective assistance of counsel. We conclude, however, that the district court properly rejected the attorney's conclusion as inconsistent with the first prong of the two-step test of ineffectiveness established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Under *Strickland,* convicted defendants may succeed on a claim of ineffective assistance of counsel only if they establish both that their representation "fell below an objective standard of reasonableness" and that they were prejudiced by this deficient performance. *Id.* at 687–88, 104 S.Ct. at 2064. Contrary to appellant's contention, the failure by counsel in a capital case to raise any particular claim or claims does not *per se* fall below an objective standard of reasonableness. *See Smith v. Murray,* —— U.S. ——, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). In *Strickland,* a capital case, the Court emphasized that in evaluating a claim of ineffective assistance a federal habeas court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689, 104 S.Ct.

at 2065. Thus, in either a capital or a non-capital case, a habeas petitioner may succeed on a claim of ineffective assistance of counsel only after making a threshold showing that the challenged conduct of the attorney fell below an objective standard of reasonableness judged in light of "the facts of the particular case." *Id.* at 690, 106 S.Ct. at 2066.

Here, however, when given the opportunity to present evidence that his counsels' failure to assert the *Swain* claim was unreasonable in light of the particular facts of the case, appellant offered nothing but the legally unsupportable contention that a decision not to raise *any* claim constitutes ineffective assistance. Indeed, the only evidence presented in the district court that even touched on the merits of the *Swain* claim consisted of testimony by one of appellant's counsel that he did not include the *Swain* claim on direct appeal because he considered it a "loser" that would detract from the claims that he believed were more viable. *See Smith v. Murray,* 106 S.Ct. at 2666–67. Because a *Swain* claim is based primarily upon evidence outside a defendant's own trial, the absence of any evidence concerning the merits of the claim leaves us with no basis upon which to conclude that appellant has overcome the presumption that his counsel acted reasonably in not raising the *Swain* claim. *Cf. Matire v. Wainwright,* 811 F.2d 1430 (11th Cir.1987) (finding on basis of trial record that counsel was ineffective for failure to raise on appeal claim of prosecution's improper use at trial of post-arrest silence). Consequently, appellant has not established cause necessary to excuse the procedural bar resulting from his counsels' failure to raise the *Swain* claim at trial or on direct appeal.

In contrast to the *Swain* claim, the other claims found by the district court to be procedurally barred were properly asserted in appellant's state coram nobis petition. We need not now determine, however, whether the state coram nobis court's summary denial of the petition should be construed as a decision on the merits of these claims. For, assuming *arguendo* that appellant is not procedurally barred from asserting these claims, *see Smith v. Wain-*

*wright*, 741 F.2d 1248, 1258 (11th Cir.1984), *cert. denied*, 470 U.S. 1087, 105 S.Ct. 1853, 85 L.Ed.2d 150 (1985), we conclude that appellant has not demonstrated on the merits of these or any of his claims that he is entitled to habeas relief.

### III. JURY COMPOSITION

In addition to the procedurally barred *Swain* claim, appellant raises two other challenges to the composition of the trial jury: he contends that in his own trial the prosecution unconstitutionally used peremptory challenges along racial lines and that the trial court improperly dismissed one juror who expressed feelings in principle against the death penalty.

#### A. *Batson Claim*

■■■ To the extent that appellant challenges on equal protection grounds the exclusion of black jurors in his own particular trial, *see Batson v. Kentucky, supra,* the claim is precluded by *Allen v. Hardy, supra,* which held that *Batson* is not retroactive to cases in federal habeas corpus proceedings. Appellant's challenge to the exclusion of black jurors in his own trial similarly fails to state a sixth amendment claim that would entitle him to habeas relief.[9] Although the sixth amendment requires that jury panels or venires be drawn from a source "fairly representative of the community," it does not demand "that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690 (1975). In *Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 1764–65, 90 L.Ed.2d 137 (1986), the Supreme Court refused to extend the fair cross-section requirement to petit juries, and we decline to do so here.

In *McCree,* the Supreme Court did not foreclose the possibility that the sixth amendment offers some protection against the exclusion of blacks from petit juries by use of peremptory challenges. As an alternative rationale for its holding that death-qualified juries do not violate the fair cross-section requirement, the Court noted that "groups defined solely in terms of shared attitudes" are not among those "distinctive groups in the community" upon which the fair cross-section requirement traditionally has focused. 106 S.Ct. at 1765. Blacks, of course, do constitute such a "distinctive group." *Id.*

Yet, we need not decide here when, if ever, the sixth amendment's fair cross-section requirement prohibits the use of peremptory strikes to eliminate blacks from a petit jury, *but see United States v. Dennis,* 804 F.2d 1208, 1209 n. 21 (11th Cir.) (indicating that sixth amendment challenge to petit jury composition is foreclosed by *Willis v. Zant,* 720 F.2d 1212, 1219 n. 14 (11th Cir.1983)), *modifying* 786 F.2d 1029 (11th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987), for appellant could not prevail on such a claim in this case. If the sixth amendment offered appellant any protection against the exclusion of blacks from his petit jury, it did so in a way that was inseparable from the corresponding protection accorded him by the equal protection clause. The claim, therefore, is precluded by *Allen v. Hardy, supra,* regardless of its characterization.

Admittedly, a jury composition claim brought under the equal protection clause differs in some respects from one brought under the sixth amendment. *Compare Batson,* 106 S.Ct. at 1722 (equal protection claim requires showing that defendant was member of a cognizable racial group excluded from the jury and that exclusion

---

**9.** The Supreme Court decided *Batson* solely on equal protection grounds, specifically declining to consider the sixth amendment issues on the merits.

Two federal courts of appeal, in cases that the Supreme Court subsequently vacated and remanded in light of *Batson* and *Allen v. Hardy,* had granted relief on fair cross-section challenges to the use of peremptory strikes against

blacks. *See Booker v. Jabe,* 775 F.2d 762 (6th Cir.1985), *vacated,* — U.S. —, 106 S.Ct. 3289, 92 L.Ed.2d 705, *reinstated on remand,* 801 F.2d 871 (6th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *McCray v. Abrams,* 750 F.2d 1113 (2d Cir.1984), *vacated,* — U.S. —, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986).

was result of purposeful discrimination), with *Duren v. Missouri,* 439 U.S. 357, 359 n. 1, 368 n. 26, 99 S.Ct. 664, 666 n. 1, 670 n. 26, 58 L.Ed.2d 579 (1979) (fair cross-section claim does not require showing that defendant was member of the excluded class or that exclusion was result of purposeful discrimination). These differences, however, are of no consequence here, where appellant alleges the same facts in an attempt to establish prima facie claims under both the sixth amendment and the equal protection clause,[10] and where the state's rebuttal to both claims would depend upon the same facts.[11]

Moreover, both claims are based upon the notion that "[t]he exclusion of [blacks] from jury service, like the arbitrary exclusion of any well-defined class of citizens, offends a number of related constitutional values." *Peters v. Kiff,* 407 U.S. 493, 498, 92 S.Ct. 2163, 2166, 33 L.Ed.2d 83 (1972). Indeed, both claims serve identical purposes: "guard[ing] against the exercise of arbitrary power," preserving "public confidence in the fairness of the criminal justice system," and ensuring that historically disadvantaged groups are not prevented from " 'sharing in the administration of justice [as] a phase of civic responsibility.' " *Tay-*

*lor v. Louisiana,* 419 U.S. 522, 530–31, 95 S.Ct. 692, 698, 42 L.Ed.2d 690 (1975) (quoting in part *Thiel v. Southern Pacific Co.,* 328 U.S. 217, 227, 66 S.Ct. 984, 989, 90 L.Ed. 1181 (1946) (Frankfurter, J., dissenting)) (fair cross-section); *see Batson,* 106 S.Ct. at 1717–18 (listing same purposes in equal protection context). Thus, because appellant's sixth amendment claim and his equal protection claim are dependent upon the same factual circumstances,[12] and because the claims serve virtually identical purposes, appellant cannot escape the preclusive effect of *Allen v. Hardy, supra,* merely by labeling the claim with the sixth amendment.

## B. *Witt Claim*

■ Appellant's second challenge to the composition of the jury that tried him is his claim that one potential juror was improperly dismissed for cause after expressing "feelings in principle against the death penalty." A review of the voir dire demonstrates, however, that this potential juror did not express mere "feelings in principle against the death penalty," but rather an unequivocal conviction that she could not vote to impose the death penalty under any circumstances.[13] Where a potential juror

**10.** We express no opinion whether *Allen v. Hardy, supra,* would preclude a fair cross-section challenge to a petit jury where the case had completed direct appeal prior to the Supreme Court's decision in *Batson, supra,* but where the claim could not have been raised on equal protection grounds—e.g., a man challenging the exclusion of women by peremptory challenge. *Cf. Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (holding *Batson* retroactive to cases pending on direct appeal when *Batson* was decided); *United States v. David,* 803 F.2d 1567 (11th Cir.1986).

**11.** Under *Batson,* the state may rebut the defendant's prima facie case of purposeful discrimination by presenting a "neutral explanation for challenging black jurors." 106 S.Ct. at 1723. Likewise, to rebut a prima facie fair cross-section claim, the state would have to make a similar showing to demonstrate that the challenges to the black jurors advanced a legitimate state interest. *See, e.g., Duren,* 439 U.S. at 368–69, 99 S.Ct. at 670. Significantly, in discussing the level of explanation necessary for the state to rebut a prima facie equal protection claim, the Supreme Court in *Batson* relied upon the standards set forth by the Second and Sixth Circuits for determining the sufficiency of re-

buttals to sixth amendment fair cross-section challenges to the use of peremptory strikes. *See Batson,* 106 S.Ct. at 1723 & n. 20 (citing *McCray v. Abrams,* 750 F.2d at 1132; *Booker v. Jabe,* 775 F.2d at 773).

**12.** We emphasize that the claims at issue here are dependent upon the same factual predicate: the exclusion from the petit jury by peremptory challenge of blacks *qua* blacks. They do not merely arise from the same event, as would be the case, for example, where a suspect under police interrogation could implicate both the fifth amendment right against self-incrimination and the sixth amendment right to counsel by uttering a single statement. In that situation, the single statement could support the different factual predicates necessary to establish the separate claims, i.e., that the individual asserted the right to remain silent *and* the right to counsel.

**13.** During voir dire questioning, appellant's counsel asked the juror, "[I]f the evidence came out and it looked like you were supposed to vote one way or another as to the guilt or the innocence of [appellant] would you be able to do that?" She replied, "I would have to vote against the chair."

maintains opinions regarding capital punishment that "would 'prevent or substantially impair the performance of [her] duties as a juror in accordance with [her] instructions and [her] oath,'" *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (quoting *Adams v. Texas,* 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980)), the excusal of that juror for cause violates neither a defendant's sixth amendment right to an impartial jury, *Witt, supra,* nor the right to a jury chosen from a fair cross-section of the community, *Lockhart v. McCree, supra.*

## IV. TRANSCRIPT OF PRIOR TRIAL

■ Appellant next asserts that he is entitled to habeas relief because the state refused to provide him with a free transcript of his first trial. In *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971), the Supreme Court held that as a matter of equal protection a state "must provide an indigent defendant with a transcript of a prior proceeding when that transcript is needed for an effective defense." *See also Roberts v. LaVallee,* 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) (granting habeas relief for refusal of state to provide indigent defendant with free transcript of preliminary hearing). The Court concluded in *Britt,* however, that because the defendant had available alternatives that were "substantially equivalent" to a transcript, no constitutional rights were violated. 404 U.S. at 230, 92 S.Ct. at 435; *see Jefferies v.*

*Wainwright,* 794 F.2d 1516 (11th Cir.1986) (upholding denial of habeas relief where petitioner had functional alternatives to transcript of preliminary hearing).

Similarly, in this case, both the Alabama Criminal Court of Appeals and the Alabama Supreme Court determined on direct appeal that the transcript of appellant's second trial demonstrated that appellant had available adequate substitutes that permitted him to engage in an effective defense.[14] These determinations by the state appellate courts are factual findings entitled to a presumption of correctness in a federal habeas corpus proceeding. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *see Jackson v. Estelle,* 672 F.2d 505, 508 (5th Cir.1982) (state appellate court finding regarding denial of transcript presumed correct under *Sumner v. Mata*).

Appellant, moreover, has failed to establish the applicability of any of the statutory exceptions to this presumptive correctness. *See* 28 U.S.C. § 2254(d)(1)–(8). Despite appellant's contention that the state court has not held an evidentiary hearing on the claim, the appellate process itself constitutes a "hearing" within the meaning of the federal habeas corpus statute. *Sumner v. Mata, supra.* And although appellant claims that the trial court record "is replete with difficulties encountered by his attorneys in the inability to retrieve testimony from the first trial," we conclude that the Alabama appellate court findings are fairly supported by the transcript of

---

"Under any circumstances, no matter how serious the crime might be?" asked appellant's counsel. The juror responded: "Yes."

**14.** The Alabama Court of Criminal Appeals stated:

For aught that appears in the record before us, the appellant had access to and took advantage of adequate alternatives or substitutes for the requested transcripts. Appellant's attorneys in the trial below and on this appeal also represented him during the mistrial. There was nothing in the record to indicate that they were denied access to the court reporter from the mistrial for recitation of any portion of the reporter's notes or that any portion of the appellant's defense in the second trial was weakened due to the absence of a court-ordered free transcript.

456 So.2d at 388.

The Alabama Supreme Court found:

Lindsey's attorneys attacked the weaknesses in the State's case and established the theory of their defense in cross-examining the State's witnesses. They had transcripts of the prior testimony of three of the principal witnesses (two officers and the forensic pathologist) and statements given to the police by two other key witnesses (members of Lindsey's household). In closing arguments, Lindsey's attorneys emphasized the inferences to be drawn in his favor, chiefly from inconsistencies among the witnesses' testimony and from questions raised about the State's handling of the case.

456 So.2d at 394.

the second trial. *See* 28 U.S.C. § 2254(d)(3). As noted by the district court below, the alternatives available to appellant's trial counsel compare favorably to those held adequate in *Britt.* As in *Britt,* the same attorneys represented appellant at both trials and the same court reporter recorded the testimony. Moreover, in contrast to *Britt,* appellant's attorneys had access to portions of the actual transcripts of the first trial. Accordingly, based upon the factual findings of the Alabama appellate courts, we conclude that appellant's claim concerning the denial of a transcript of his first trial was properly denied.

## V. THE CONFESSIONS

Appellant presents two claims challenging the admission into evidence of his recorded robbery confession and his unrecorded murder confession to Officer Bell. He contends that the manner in which the police officers elicited the statements violated both his fifth amendment right against self-incrimination and his sixth amendment right to counsel. Additionally, he claims that his trial was rendered fundamentally unfair by the failure of the prosecution to disclose prior to trial the existence of his confession to Officer Bell. We conclude that neither claim has merit.

### A. *Voluntariness*

 In contending that the statements were improperly obtained in violation of his fifth and sixth amendment rights, appellant alleges that an attorney that his wife retained for him had instructed both the police and appellant not to engage in questioning unless the attorney was present.

Thus, he urges, the statements were improperly elicited unless he both initiated the subsequent discussions with the police and knowingly and voluntarily waived his fifth and sixth amendment rights. *See Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983) (two-pronged fifth amendment inquiry); *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (same); *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (standard for waiver of sixth amendment right). We may assume, without deciding, that the factual circumstances alleged by appellant fully implicated the fifth and sixth amendment rights he asserts,[15] for the record clearly demonstrates that appellant both initiated the conversation and knowingly and voluntarily waived his fifth and sixth amendment rights.

At a hearing conducted by the trial court to consider appellant's objections to the admission of the confessions, Officer Bell testified that he and another officer were searching appellant's house pursuant to a warrant when appellant attempted to place a collect telephone call from jail to his wife. Bell answered the phone and informed the operator that appellant's wife was not in but that he would accept the call. He then advised appellant that his wife was out and, in response to appellant's questions, explained his own presence at the house. Bell testified that at that point appellant said: " '[W]ell I'll talk to you.' " Bell asked whether appellant wanted to talk on the telephone or at headquarters, and appellant responded: " 'I'll talk to you when you come to headquarters.' "

---

**15.** Appellant has not alleged, nor does the record clearly indicate, that adversarial judicial proceedings necessary to trigger appellant's sixth amendment right to counsel had been initiated prior to the time he gave the statements. *See Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 1145–47, 89 L.Ed.2d 410 (1986); *Smith v. Wainwright,* 777 F.2d 609, 619 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986). Appellant also has not alleged that he—as opposed to his attorney—ever asserted his fifth amendment right to remain silent. In light of our resolution of appellant's claim, we need not determine whether appellant's sixth amendment right to counsel in fact

had attached or whether an attorney's instructions that police not question a client is sufficient to implicate the prophylactic rule of *Oregon v. Mitchell, supra,* that prohibits police from initiating further discussions once an individual has asserted the right to counsel. *Cf. Moran v. Burbine,* 106 S.Ct. at 1142 (failure of police to inform suspect of attorney's telephone call irrelevant for fifth amendment waiver analysis where suspect not aware of event). We similarly need not consider what legal effect, if any, is presented by the fact that appellant's attorney withdrew from his representation prior to the time of the interrogation but never so informed appellant.

When Bell returned to police headquarters, he and three other officers took appellant into a room for questioning. A transcribed tape of that session shows that before questioning began an officer read appellant his *Miranda* rights and that appellant stated that he understood the rights. The transcript further shows that appellant fully concurred with Bell's description of the telephone conversation that led to the interrogation session.[16] Moreover, appellant has never since attempted to refute Bell's account of the telephone conversation. Although appellant testified at a hearing in trial court that he was coerced during the interrogation, he did not then and does not now claim that prior to his telephone contact with Bell the police attempted to coerce him into giving a statement. Hence, in light of the clear and unrefuted evidence in the record, we conclude that appellant initiated the questioning.[17]

We conclude similarly that in giving the statements appellant validly waived both his fifth amendment right against self-incrimination and his sixth amendment right to counsel. For a waiver of these rights to be effective, the prosecution at trial must meet a "heavy burden of establishing 'an intentional relinquishment or abandonment of a known right or privilege.'" *Martin v. Wainwright*, 770 F.2d 918, 931 (11th Cir. 1985) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)), *modified*, 781 F.2d 185 (11th Cir. 1986); *see Tinsley v. Purvis*, 731 F.2d 791, 794 (11th Cir.1984) (analysis identical for determining effectiveness of waiver of both fifth and sixth amendment rights). On habeas review, however, although courts will "indulge every reasonable presumption against waiver," *Brewer*, 430 U.S. at 404, 97 S.Ct. at 1242; *Tinsley*, 731 F.2d at 795, the burden falls on the petitioner to establish that a waiver was ineffective. *See Martin*, 770 F.2d at 918; *Jurek v. Estelle*, 623 F.2d 929, 937 (5th Cir.1980) (en banc). This burden may be met by demonstrating that the appellant either did not comprehend the right or relinquished the right involuntarily. *See, e.g., Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986); *Smith v. Wainwright*, 777 F.2d 609, 619 (11th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986); *cf. Colorado v. Connelly*, — U.S. —, 107 S.Ct. 515, 93

**16.** The transcript contains the following questioning of appellant by Bell:

Q: You called back, a collect call.
A: Yeah.
Q: He answered the phone first, Sergeant Williams. The phone rang again and I answered it.
A: Well was you there?
Q: And you said, "who is this" and I said "Sergeant Bell." And the operator said it was a collect call. I said, well this is Sergeant Bell and ask him does he want to talk to me. And you said, "yeah, let me talk to him." And I talked to you.
A: Yeah.
Q: And you said you wanted to talk to me last night and you couldn't and you wanted to talk to me today. ...

**17.** No court previously has found as fact that appellant initiated the conversation. Although the district court below accorded a presumption of correctness to such a "finding" by the Alabama Court of Criminal Appeals, that court simply noted that Officer Bell testified at the suppression hearing that appellant initiated the conversation. 456 So.2d at 389. The state appellate court merely upheld as supported by a preponderance of the evidence the trial court's

finding that the statements were made voluntarily. *Id.*

The absence of a prior factual finding does not require that we remand to the district court. In "a habeas corpus case in which the facts are contained primarily in the state court records," the facts are "equally available to us as to the federal court[ ] below." *Neil v. Biggers*, 409 U.S. 188, 193 n. 3, 93 S.Ct. 375, 379 n. 3, 34 L.Ed.2d 401 (1972). Accordingly, "we may, where the district court made no findings on matters crucial to the ultimate determination, reach into the record and rely on undisputed facts clearly supported therein." *Jurek v. Estelle*, 623 F.2d 929, 932 (5th Cir.1980) (en banc) (binding on this court pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc)); *see also* 9 Wright & Miller, Federal Practice and Procedure: Civil § 2577 (remand for fact-finding "unnecessary if all the evidence is documentary or if the facts are undisputed") (footnotes omitted). As previously discussed, the fact that petitioner initiated the conversation was not disputed at the state court suppression hearing and is otherwise clearly supported by the state court record. Of course, where "such clarity does not appear, a remand for further findings may be in order." *Jurek*, 623 F.2d at 932.

L.Ed.2d 473 (1986) (exclusion of confession for "involuntary" waiver proper only when caused by "coercive police activity"). The effectiveness of a waiver of fifth or sixth amendment rights is a "legal question requiring an independent federal determination," *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 450, 88 L.Ed.2d 405 (1985), based upon the "'particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.'" *Edwards v. Arizona*, 451 U.S. at 482–83, 101 S.Ct. at 1884 (quoting *Johnson v. Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023 (1938)).

Applying this standard, we conclude that appellant gave the statements voluntarily. As previously noted, appellant himself initiated the conversation with the police. Prior to giving the statements, he was informed of his *Miranda* rights and indicated verbally both that he understood the rights and that he was willing to relinquish them. He also signed a written waiver of those rights. Appellant's prior experience with the judicial system and his attorney's explicit instructions not to talk to the police further indicate that he fully understood the rights he waived. Moreover, his attempt to blame "Bob" for the murder demonstrates that appellant's decision to give the statements was a strategic choice voluntarily made.

Appellant's contention that his will was overborne by police coercion during the course of the questioning similarly is unavailing. Appellant testified at the trial court hearing that officers told him that he would be charged with capital murder unless he gave a statement. This was the only factual assertion that appellant raised to support his motion to suppress the confessions, and it was denied by police officers. The trial court's determination that the statements were given voluntarily thus contains an implicit factual finding against appellant's credibility. *See LaVallee v. Delle Rose*, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973). Because this finding is supported by an adequate state record, we must presume that it is correct. *Id.* Indeed, the transcript of the interrogation session demonstrates that the officers told

appellant that he *would be* charged with capital murder, and that he might as well confess. Informing a suspect "in a noncoercive manner of the realistically expected penalties and encouraging [him] to tell the truth" does not render a confession involuntary. *Martin v. Wainwright*, 770 F.2d at 926 (quoting *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir.1978)). We thus conclude, in light of all the circumstances, that appellant's confessions were knowingly and voluntarily given.

## B. *Late Disclosure of the Unrecorded Confession*

In addition to challenging the voluntariness of his statements to police, appellant claims that his trial was rendered fundamentally unfair by the late disclosure of his unrecorded murder confession to Officer Bell. Pursuant to Alabama rules of criminal discovery, appellant made a request prior to his first trial for all prosecution information regarding statements made by him. In response, the prosecution produced only a transcript of the recorded statement in which appellant admitted participating in the robbery of the victim's home but denied killing the victim. Prosecution counsel had assured appellant that they had produced all statements of appellant and had offered no other statements at the first trial.

Only when Officer Bell was called to testify at the second trial did the prosecution indicate the existence of the murder confession. Appellant's counsel moved for a mistrial on grounds that admission of the undisclosed confession constituted undue "surprise." The prosecutor told the court that he had not intentionally failed to disclose the confession, but rather had simply overlooked in his files the notation regarding the conversation between Bell and appellant. He said that another officer informed him of the confession that morning. The court granted defense counsel an opportunity to question Bell, but subsequently denied the motion for a mistrial and allowed Bell's testimony to be admitted into evidence.

Appellant claims that because of the late disclosure of the statement he was unable either to challenge Bell's testimony at trial or to structure his defense to counter its effects. He argues that an evidentiary hearing is necessary so that he can demonstrate that he was thereby prejudiced by the late disclosure.

■ Although due process requires that prosecutors disclose "evidence favorable to the accused," *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), defendants have "no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). Nevertheless, under certain circumstances the late disclosure even of inculpatory evidence could render a trial so fundamentally unfair as to violate due process. *See Machin v. Wainwright*, 758 F.2d 1431 (11th Cir.1985). For example, a trial could be rendered fundamentally unfair if a defendant justifiably relies on a prosecutor's assurances that certain inculpatory evidence does not exist and, as a consequence, is unable to effectively counter that evidence upon its subsequent introduction at trial.[18] *Cf. United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985) (discussing possible detrimental effects to defense resulting from nondisclosure of exculpatory evidence); *Machin*, 758 F.2d at 1434 (trial not fundamentally unfair where defense counsel could have taken steps to lessen effect of late disclosure). A trial is not so fundamentally unfair as to warrant habeas relief, however, merely because the defense is impaired by improper actions of the prosecution. Rather, habeas relief is justified only upon a showing that the impairment to the defense affected the outcome of the trial. *Cf. Bagley, supra; Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 2646, 86 L.Ed.2d 231 (1985); *Strickland v. Washington, supra.*

■ Here, there is little question that the unrecorded murder confession played a significant role in the appellant's conviction. Appellant, however, has not alleged that the trial outcome would have been different if the prosecution had disclosed the confession earlier, nor has he alleged any facts to suggest that an earlier disclosure would have yielded a different result. Appellant contends only that he was unable either to challenge the statement or to structure his defense with the knowledge that the statement would be part of the prosecutor's case. He fails to suggest, however, in what way prior knowledge of the statement could have enabled his attorney to challenge the testimony more effectively, or how a different defense could have militated against its effects. Moreover, appellant's counsel requested and received a recess to question Officer Bell. After this recess, counsel vehemently cross-examined Bell concerning his failure to testify at the first trial. Appellant does not now suggest how Bell's testimony could have been impeached more effectively. Indeed, although appellant argues that the confession had a "devastating effect" on his defense, he fails to show how advance knowledge that it would be introduced could have made the evidence any less devastating.[19] Appellant, consequent-

---

**18.** Appellant claims that the admission of the unrecorded confession after the late disclosure of its existence violated Alabama law. *See* Ala. R.Crim.Pro. 18.1(a)(2) (requiring disclosure upon request of any statement made by a defendant to a law enforcement official), 18.5(a) (authorizing court upon discovery of noncompliance with criminal discovery requests to "grant a continuance," prohibit introduction of "evidence not disclosed," or "enter such other order as the court deems just under the circumstances"). Whether the admission of the confession in fact violated Alabama evidentiary rules is not an issue properly before this court; our sole concern is whether the evidentiary ruling denied appellant's constitutional right to a fun-

damentally fair trial. *See, e.g., Osborne v. Wainwright*, 720 F.2d 1237, 1238–39 (11th Cir.1983) (per curiam). The existence of state rules of criminal discovery and of sanctions for noncompliance with those rules is not irrelevant, however, to the constitutional analysis. By granting defendants a state law right to criminal discovery, these rules increase the likelihood that defendants would be justified in preparing their defenses in the belief that certain inculpatory evidence will not be introduced at trial.

**19.** Because appellant has failed to allege facts that in any way challenge the reliability of the trial outcome, we need not consider what de-

ly, has failed to allege facts which, if true, would warrant habeas relief, and thus is not entitled to an evidentiary hearing on this claim. *See Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

 Appellant contends that by failing to call alibi witnesses to testify in his defense, his trial counsel was so ineffective as to violate appellant's right to counsel protected by the sixth and fourteenth amendments. After conducting an evidentiary hearing on this claim, the district court concluded that the representation of appellant by his trial counsel did not fall below an objective standard of reasonableness, and thus did not meet the threshold requirement of *Strickland v. Washington,* 104 S.Ct. at 2064. We conclude that the record clearly supports the district court's finding. As the court observed, appellant's trial counsel would have engaged in "poor strategy" had they attempted "[t]o pursue the alibi defense when the petitioner had given a twenty-nine page statement to the police that was materially inconsistent with the alibi story and when at least one of the alibi witnesses placed the petitioner in an automobile which fit the description of the one owned by the victim." A habeas petitioner who proposes alternative trial strategy that would itself have proved futile has failed to demonstrate that the representation at trial fell below an objective standard of reasonableness. *See Strickland, supra.*

## VII. SENTENCING

Appellant raises several claims challenging the imposition of the death penalty by the trial judge. He urges that three aggravating circumstances found by the trial judge either were absent in this case or are constitutionally insufficient to warrant the death penalty. He also claims that during the sentencing hearing the trial judge improperly considered prior uncounseled con-

victions, non-convictions, and nonstatutory aggravating factors. He further contends that the resulting death sentence is disproportionate to the facts of this case. Moreover, he claims that neither the trial judge nor the Alabama appellate court sufficiently compared the proportionality of the penalty as applied in this case with those of similar cases. Based on these alleged errors in his own sentencing, appellant challenges the constitutionality of the Alabama capital punishment statute on grounds that it lacks adequate procedures at sentencing and that it is generally unreliable. We conclude that appellant cannot prevail on these claims.

### A. *Aggravating Circumstances*

After the sentencing hearing in appellant's trial, the jury, by a vote of eleven to one, recommended a sentence of life in prison. The judge, however, imposed a sentence of death.[20] The judge found the presence of four statutory aggravating circumstances: (1) that the capital offense was committed by a person under sentence of imprisonment; (2) that the defendant was previously convicted of a felony involving the use or threat of violence; (3) that the offense was committed during the commission of a burglary; and (4) that the offense was especially heinous, atrocious or cruel compared to other capital offenses. Appellant now contends that three of these aggravating circumstances either were not present in this case or are insufficient to warrant the imposition of the death penalty. We disagree.

 Appellant's assertion that murder during the course of a burglary is invalid as an aggravating factor is based upon a misconstruction of *Proffitt v. Wainwright,* 685 F.2d 1227, 1268 (11th Cir.1982), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983). In *Proffitt,* this court held only that the habeas petitioner was entitled to resentencing after several of the aggravating circumstances relied upon by

---

gree of probability of a different result is necessary for habeas relief to be granted.

**20.** The Alabama capital punishment statute provides that the court impose sentence with the aid of an advisory sentencing verdict from the jury. *See* note 2, *supra.*

the trial court were found invalid as applied in that case. Of the four aggravating circumstances relied upon by the trial court, the only one found valid by this court was that the defendant had committed a murder during the course of a burglary. This court concluded, however, that because the sole purpose of the burglary was to commit the murder, that circumstance might not have been sufficiently aggravating, in itself, for the trial court to have imposed the death penalty. *See* 685 F.2d at 1268.

In finding that the habeas petitioner was entitled to resentencing, this court clearly did not conclude either that the aggravating circumstance of murder committed during the course of a burglary was constitutionally invalid or that this circumstance alone could not justify the imposition of the death penalty. To the contrary, this court gave full recognition to the Supreme Court's earlier determination that this and other aggravating circumstances contained in the Florida capital punishment statute were facially sufficient to prevent the imposition of the death penalty in an arbitrary or capricious manner. *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *see also Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (upholding as facially valid Georgia capital punishment statute also containing aggravating circumstance of murder committed during the course of a burglary). Moreover, here, in contrast to *Proffitt,* appellant burglarized the victim's house to commit a robbery, which resulted also in a murder. The act of burglary accordingly constituted a valid aggravating circumstance.

 Appellant's claim that the crime was not "heinous, atrocious or cruel" similarly is without foundation. The victim was bound and gagged prior to being both stabbed and shot. Bruises on the victim's body indicated that she otherwise had been abused. The evident physical and mental torture is sufficient for the trial court validly to have concluded that the heinousness

of the murder was an aggravating circumstance. *See, e.g., Francois v. Wainwright,* 741 F.2d 1275, 1286–87 (11th Cir.1984) (heinousness finding valid where victims bound and gagged). Moreover, in view of our determination that the facts of this case support a constitutionally valid finding of heinousness as an aggravating factor, we reject appellant's contention that "heinousness" is an unconstitutionally vague standard. Appellant's conclusory assertion is unsupported by any allegation of fact beyond the circumstances of this particular case, and thus fails to state a claim for which habeas relief can be granted.

 We also reject appellant's challenge to the aggravating circumstance of being under sentence of imprisonment at the time of the capital offense. He contends that this circumstance is insufficient to support a sentence of death because he in fact was on parole when the murder was committed. Although the Supreme Court has characterized the fact of being out on parole as a "relatively weak aggravating circumstance," *Barclay v. Florida,* 463 U.S. 939, 955, 103 S.Ct. 3418, 3427, 77 L.Ed.2d 1134 (1983) (plurality opinion), we need not consider in this case whether the Constitution would permit an individual to qualify for the death penalty solely because of the circumstance of being on parole during the commission of a capital crime. The trial court here found at least two other aggravating circumstances constitutionally sufficient to place appellant within the "narrow class of persons eligible for the death penalty." *Zant v. Stephens,* 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983).[21] In determining whether the death penalty was an appropriate sentence, the trial court was not forbidden by the Constitution from considering that appellant was on parole when the murder was committed. *See id.* at 887–88, 103 S.Ct. at 2746–47. Consequently, the sentence is not invalid merely because the court considered the factor of parole as a statutory aggravating circumstance. *Id.*

---

21. Appellant did not challenge the trial court's finding of the aggravating circumstance that the capital crime was committed by an individual previously convicted of a felony involving the use or threat of violence.

We reject for similar reasons the challenge to the trial court's considerations of appellant's uncounseled juvenile convictions, non-convictions, and other non-statutory aggravating factors. Both the Alabama capital punishment statute and the United States Constitution permit sentencing judges to consider a defendant's prior criminal record and other nonstatutory aggravating factors in deciding whether to impose the death penalty. Ala. Code §§ 13A–5–45(d), –47(a); *Stephens*, 462 U.S. at 887–88, 103 S.Ct. at 2746–47. Appellant contends, however, that *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), prohibits a sentencing judge from considering uncounseled convictions. Thus, he argues, because several of his juvenile convictions were uncounseled, his death sentence is invalid. We need not decide whether appellant's construction of *Tucker* is correct, for it is clear that the counseled convictions on appellant's criminal record were sufficient to render harmless any possible invalid consideration of the uncounseled convictions. Indeed, one of the four statutory aggravating factors found by the court—against no statutory mitigating circumstances—was that appellant previously had been convicted of a crime involving violence or the threat of violence.

### B. *Proportionality Review*

Appellant raises two claims challenging the proportionality of the death penalty as applied to the crime for which he was convicted. One claim, which apparently seeks to have a federal habeas court conduct a *de novo* proportionality review, is precluded by *Moore v. Balkcom*, 716 F.2d 1511, 1518 (11th Cir.1983), *cert. denied*, 465 U.S. 1084, 104 S.Ct. 1456, 79 L.Ed.2d 773 (1984), and *Tucker v. Zant*, 724 F.2d 882, 895 (11th Cir.1984), *rev'd in part on other grounds on rehearing sub nom. Tucker v. Kemp*, 762 F.2d 1480 (11th Cir.) (*en banc*), *vacated*, — U.S. —, 106 S.Ct. 517, 88 L.Ed.2d 452 (1985), *on remand*, 802 F.2d 1293 (11th Cir.1986) (*en banc*), *cert. denied*, — U.S. —, 107 S.Ct. 1359, 94 L.Ed.2d 529 (1987). Furthermore, we agree with the district court that the appli-cation of the death penalty under the facts of this case does not "shock the conscience." *See, e.g., Tucker v. Zant*, 724 F.2d at 895.

We also reject appellant's claim that the trial court and the Alabama appellate courts violated his constitutional rights by not conducting a detailed determination of the proportionality and appropriateness of his death sentence in comparison with other capital murders. The Constitution does not require a proportionality review. *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). And we refuse to mandate as a matter of federal constitutional law that where, as here, state law requires such review, courts must make an explicit, detailed account of their comparisons. Based on their own past experience in reviewing capital punishment cases, state appellate courts "can rationally distinguish between those individuals for whom the death penalty is an appropriate sanction and those for whom it is not," *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 3163, 82 L.Ed.2d 340 (1984), without listing in their opinions the facts that did or did not justify the imposition of the death penalty in prior cases.

### C. *The Alabama Capital Punishment Statute*

Having determined that the Alabama capital punishment statute was constitutionally applied in appellant's case, we reject appellant's conclusory facial attacks on the statute. His contention that the statute lacks standards for determining the burdens of proof and persuasion in the sentencing phase is refuted by the language of the statute itself. In support of this claim, appellant asserts only that the statute permits the court to consider a pre-sentence report but does not permit the defendant either to rebut the information in the report or to present further mitigating circumstances to offset the information. The statute, however, expressly provides that the pre-sentence report be made available to the defendant and that the defendant be permitted to "respond to it and to present evidence to the court about

any part of the report which is the subject of factual dispute." Ala.Code § 13A–5–47(b); *see also Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 31 L.Ed.2d 393 (1977) (Constitution requires that capital defendants be allowed to respond to all evidence used in sentencing determination). In the absence of any allegation that appellant attempted to respond to information in the pre-sentence report but was denied the opportunity, we decline to declare the statute's sentencing procedure facially invalid. Likewise, in view of appellant's conclusory and nonspecific attack on the general reliability of the Alabama capital punishment statute, we conclude that this claim was properly dismissed by the district court.

## VIII. OTHER CLAIMS

■ Appellant's remaining claims also are without merit. His assertion that the declaration of a mistrial in his first trial violated his right against double jeopardy is unfounded. A "trial judge's belief that the jury is unable to reach a verdict" is a "classic basis for a proper mistrial." *Arizona v. Washington,* 434 U.S. 497, 509, 98 S.Ct. 824, 833, 54 L.Ed.2d 717 (1978). Because the trial court is in the best position to determine whether the jury will be able to reach a just verdict, the decision to declare a mistrial in such event is accorded great deference. *Id.* at 510 & n. 28, 98 S.Ct. at 832 & n. 28. Where, as here, the jury twice returned to tell the trial court that it could not reach a verdict, the court did not abuse its discretion by declaring a mistrial, even though the jury had deliberated only three hours. *See id.* This is especially so in light of the jury foreman's inadvertent disclosure that only one juror was causing the deadlock. Under such conditions, there arose a "significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors." *Id.* at 509, 98 S.Ct. at 832; *see Holt v. Wyrick,* 649 F.2d 543 (8th Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 295 (1982).

■ Similarly unfounded is appellant's claim of unconstitutional prosecutorial misconduct. Although calling a defendant "scum" during the course of a closing argument might be a breach of propriety, the statement did not " 'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright,* — U.S. ——, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

Finally, appellant's claim that electrocution as a method of execution is cruel and unusual is precluded by *Johnson v. Kemp,* 781 F.2d 1570 (11th Cir.1985) (per curiam), and his claim asserting that the Alabama courts have unconstitutionally usurped legislative authority is frivolous.

For the foregoing reasons, the judgment of the district court denying habeas relief is AFFIRMED.

TJOFLAT, Circuit Judge, specially concurring:

Although I agree that our circuit precedent permits the majority to entertain the merits of petitioner's claims, I write to object to our decisional law that permits the majority to entertain a district court order that does not dispose of all of the petitioner's claims. The district court never ruled on one of petitioner's claims. *Ante* at 1142 n. 7. The trial court thus erroneously entered a "final judgment," which, by definition, purported to terminate the litigation in full. In my view, Supreme Court precedent, *see Andrews v. United States,* 373 U.S. 334, 340, 83 S.Ct. 1236, 1240, 10 L.Ed.2d 383 (1963); *Collins v. Miller,* 252 U.S. 364, 365, 40 S.Ct. 347, 347, 64 L.Ed. 616 (1920), renders a court of appeals powerless to review an order denying a writ of habeas corpus that does not dispose of all the claims that the petitioner presented. *See Blake v. Kemp,* 758 F.2d 523, 535–43 (11th Cir.) (Tjoflat, J., dissenting), *cert. denied,* — U.S. ——, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985). Being bound, however, to follow our circuit precedent, I reach the merits of this appeal and concur in the majority's disposition.