Michael LINDSEY,
Petitioner–Appellant,

v.

Morris THIGPEN, Commissioner, Alabama Department of Corrections, Respondents–Appellees.

Nos. 86–7162, 89–7389 and 89–7390.

United States Court of Appeals,
Eleventh Circuit.

May 24, 1989.

Louis E. Braswell, David A. Bagwell, Mobile, Ala., for petitioner-appellant.

John Gibbs, William Whatley, Ed Carnes, Asst. Attys. Gen., Montgomery, Ala., for respondents-appellees.

Before TJOFLAT, VANCE and KRAVITCH, Circuit Judges.

BY THE COURT:

Michael Lindsey was convicted of murder and sentenced to death in 1982. Lindsey now seeks: (1) a stay of execution, (2) an order appointing new counsel, (3) a certificate of probable cause to appeal the district court's denial of his motion to reopen that court's 1986 judgment denying his first petition for habeas corpus ("CPC"), (4) an order recalling the mandate by which this court affirmed the district court's 1986 judgment, and (5) a certificate of probable cause to appeal the district court's denial of his third petition for habeas corpus. We deny all relief.

## I. BACKGROUND

Lindsey filed his first federal habeas petition in 1985. The district court denied habeas relief, and we affirmed. *Lindsey v. Smith*, 820 F.2d 1137 (11th Cir.), *reh'g denied*, 828 F.2d 775 (1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 1327, 103 L.Ed.2d 595 *reh'g denied*, —— U.S. ——, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989).[1] Our mandate issued on March 2, 1989. Lindsey's execution is scheduled for May 26, 1989.

On March 8, 1989, Lindsey filed a new motion in the original habeas case, CA 85-0775, urging the district court to appoint new counsel pursuant to 21 U.S.C. § 848(q) and to stay his execution. The district court denied the motion on March 24, 1989, and, on March 30, 1989, Lindsey petitioned

---

1. The facts of Lindsey's case are set forth in our prior opinion. *See* 820 F.2d at 1140–41.

this court for a writ of mandamus directing the district court to appoint new counsel. We denied the petition. *In re Lindsey,* 875 F.2d 1518 (11th Cir.1989) (per curiam).

On April 5, 1989, while the petition for mandamus was pending, the district court determined that Lindsey's March 1989 filings should be treated as a new petition for habeas corpus, which the court read to allege that Lindsey currently is insane and that, under the reasoning of *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), his execution would violate the eighth amendment's prohibition of cruel and unusual punishment. The court read Lindsey's filings also to include a motion for a stay of execution, a motion for appointment of a psychiatrist, and another motion for appointment of new counsel. The district court denied all relief on April 12, 1989, and we denied CPC. *See Lindsey v. Thigpen,* 875 F.2d 1516 (11th Cir.1989). By a separate order, we again refused to order the district court to appoint new counsel. *In re Lindsey,* 875 F.2d 1502 (11th Cir.1989).

On April 20, 1989, Lindsey returned to the Alabama trial court, seeking an order staying his scheduled execution, on the grounds of his alleged insanity. He also filed a new petition for state collateral review, which stated two claims for relief: first, that the trial court's consideration of Alabama's "especially heinous, atrocious or cruel" statutory aggravating factor in fixing his sentence violated the eighth amendment as interpreted by the Supreme Court in *Maynard v. Cartwright,* ——— U.S. ———, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); second, that the trial court's consideration of statutory aggravating factors not found by the jury violated the sixth amendment as interpreted by the Ninth Circuit in *Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir. 1988) (in banc), *petition for cert. filed,* 57 U.S.L.W. 3655 (U.S., Apr. 4, 1989) (No. 88–1553). On May 16, 1989, the trial court denied all relief, finding both claims to be procedurally barred. *State v. Lindsey,* No. CC–82–212 (Mobile Co., Ala. May 16, 1989).

Lindsey immediately returned to federal district court, moving to reopen the judgment in his first habeas case, CA 85–0775, pursuant to Fed.R.Civ.P. 60(b)(6). In support of the motion, he argued: (1) that the district court should reconsider his claim regarding the "especially heinous, atrocious or cruel" aggravating factor in light of *Cartwright* and (2) that the trial judge's override of the jury's recommendation of life imprisonment violated the sixth amendment as interpreted in *Adamson.* He also presented the *Adamson* claim via a third petition for habeas corpus, CA 89–0388. The district court denied all relief, holding that the Rule 60(b) motion "does not state 'truly extraordinary circumstances' that would justify relief from judgment," *Lindsey v. Thigpen,* No. 85–0775, mem. op. at 8 (S.D.Ala. May 19, 1989), and that the attempt to raise the *Adamson* claim in the third habeas petition "is not only an abuse of the writ but also is procedurally barred." *Lindsey v. Thigpen,* No. 89–0388–CB–C, mem. op. at 3 (S.D.Ala. May 19, 1989). The court also denied the third habeas petition on the alternative ground that "even if the claim were to withstand these [procedural] impediments, it would fail on the merits." *Id.* On May 23, 1989, the district court denied Lindsey's applications for certificates of probable cause to appeal the denial of the Rule 60(b) motion in CA 85–0775 and the denial of habeas relief in CA 89–0388. Lindsey now seeks such certificates of probable cause from this court.

On May 18, while the Rule 60(b) motion and the third petition for habeas were pending in the district court, Lindsey moved this court pursuant to 11th Cir.R. 41–1(b) to recall our mandate affirming the denial of his first habeas petition, CA 85–0775. On May 22, he added to his Rule 41–1(b) motion still another request for the appointment of new counsel. Thus, several claims for relief are now pending before this court. In the context of the first habeas case, now pending are Lindsey's Rule 41–1(b) motion to recall our mandate pursuant to Rule 41–1(b), his motion for the appointment of new counsel in the Rule 41–1(b) proceeding, and his application for a certificate of probable cause to appeal the

district court's denial of the Rule 60(b) motion.[2] In the context of the third habeas petition, only Lindsey's application for a certificate of probable cause to appeal the district court's denial of the writ is pending. We address each habeas petition separately.

## II. THE FIRST HABEAS CASE.

### A. *The Motion for New Counsel*

■ As noted above, *see supra* n. 2, Lindsey's motion for appointment of new counsel was made in district court, in the context of the Rule 60(b) motion and the third habeas petition, as well as in this court, in the context of the Rule 41–1(b) motion. In denying the motion for appointment of new counsel, the district court held:

> Lindsey has made no showing of good cause, and indeed has offered no reason, for dismissing his counsel. The Court finds the petitioner's latest motion [is] simply another attempt to circumvent the Court's decision that he is not entitled to additional or alternative counsel, and to delay execution in this case.

*Lindsey v. Thigpen,* Nos. 85–0775, 89–0388, mem. op. at 3 (S.D.Ala. May 22, 1989). We adopt this reasoning and hold that Lindsey is not entitled to appointment of new counsel at this stage of the proceedings.

### B. *The Rule 41–1(b) and Rule 60(b) Motions*

■ Rule 41–1(b) provides that the mandate of this court "once issued shall not be recalled except to prevent injustice." Because the denial of a motion under Rule 60(b) is reviewable only for an abuse of discretion and a certificate of probable cause should issue only when a habeas petitioner has made a "substantial showing of the denial of a federal right," *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983), a certificate of probable cause to appeal the denial of Lindsey's Rule 60(b) motion should issue only if Lindsey has made a substantial showing that the district court abused its discretion by denying the Rule 60(b) motion. Neither with respect to the *Cartwright* issue nor with respect to the *Adamson* issue has Lindsey satisfied either the standard governing Rule 41–1(b) or that governing the issuance of a certificate of probable cause.[3]

### 1. The "Heinous, Atrocious or Cruel" Aggravating Factor

### a. *The Original Disposition Is Not "Demonstrably Wrong"*

■ Citing *Greater Boston Television Corp. v. F.C.C.,* 463 F.2d 268, 278 n. 12 (D.C.Cir.1971), *cert. denied,* 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972), Lindsey argues that we should recall our mandate in order to prevent injustice, because *Cartwright* shows that our original disposition of his challenge to the "heinous, atrocious or cruel" aggravating factor is "demonstrably wrong."[4] Assuming *arguendo* that Lindsey correctly states the law

---

**2.** Lindsey's May 22 motion for the appointment of new counsel also was addressed to the district court, which denied the motion. *Lindsey v. Thigpen,* Nos. 85–0775, 89–0388 (S.D.Ala. May 22, 1989). Lindsey seeks no review of that order.

**3.** We do not decide the propriety of moving pursuant to Fed.R.Civ.P. 60(b) and 11th Cir.R. 41–1(b) simultaneously, as Lindsey has done in this case. Such procedural maneuvering assumes that jurisdiction of a single case (Lindsey's first habeas petition) can lie in both the district court and the court of appeals at the same time. The State has not raised this point, however, and, although it is jurisdictional and we must raise it *sua sponte,* we conclude that the district court's denial of the Rule 60(b) mo-

tion on May 19, 1989, cured whatever jurisdictional defect might have existed when Lindsey filed the Rule 41–1(b) motion on May 18, 1989. Our holding in this regard, however, should not be interpreted as an approval of Lindsey's procedural tactics.

**4.** Section 13A–5–49 of the Alabama Code provides:

> Aggravating circumstances shall be the following:
>
> .  .  .  .  .
>
> (8) The capital offense was especially heinous, atrocious or cruel compared to other capital offenses.

Ala.Code 1975 § 13A–5–49 (Michie Repl.Vol. 1982).

governing Rule 41–1(b), recall of our mandate would be improper. Contrary to Lindsey's assertion, *Cartwright* does not affect the correctness of the original disposition of this claim. Consequently, Lindsey also has failed to make a substantial showing that the district court's refusal to re-examine this claim perpetuated the "denial of a federal right."

The district court's 1986 order held that Lindsey's challenge to the trial court's consideration of the "heinous, atrocious or cruel" aggravating factor was procedurally barred. Our order affirming the district court held that it was unnecessary to determine whether the claim was procedurally barred, as it was meritless. We held that Lindsey's "conclusory assertion [that Alabama's "heinous, atrocious or cruel" aggravating factor is unconstitutionally vague] is unsupported by any allegation of fact beyond the circumstances of this particular case, and thus fails to state a claim for which habeas relief can be granted." *Lindsey v. Smith,* 820 F.2d at 1153. Thus, although no procedural bar ultimately was applied, we never reached the question of the constitutionality of the application of the "heinous, atrocious or cruel" factor in Lindsey's case. *Cartwright* simply has no effect on the correctness of our holding. Moreover, *Cartwright* does not affect the constitutionality of the application of Alabama's "heinous, atrocious, or cruel" aggravating factor to the facts of Lindsey's case.

In *Cartwright,* a defendant who had shot and killed his former employer, and attempted to kill the employer's wife, successfully challenged the imposition of the death sentence upon the jury's finding that the murder was "especially heinous, atrocious, or cruel." Holding that the disposition of Cartwright's case was controlled by *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), the Supreme Court noted:

> The aggravating circumstance at issue [in *Godfrey* ] permitted a person to be sentenced to death if the offense "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated bat-

tery to the victim." *Id.,* at 422, 100 S.Ct., at 1762. The jury had been instructed in the words of the statute, but its verdict recited only that the murder was "outrageously or wantonly vile, horrible or inhuman." The Supreme Court of Georgia, in affirming the death sentence, held only that the language used by the jury was "not objectionable" and that the evidence supported the finding of the presence of the aggravating circumstance, thus failing to rule whether, on the facts, the offense involved torture or an aggravated battery to the victim. *Id.,* at 426–427, 100 S.Ct., at 1763–1764. Although the Georgia Supreme Court in other cases had spoken in terms of the presence or absence of these factors, it did not do so in the decision under review, and this Court held that such an application of the aggravating circumstance was unconstitutional ...

> ....

> The affirmance of the death sentence by the Georgia Supreme Court was held to be insufficient to cure the jury's unchannelled discretion because the court failed to apply its previously recognized limiting construction of the aggravating circumstance. *Id.,* at 429, 432, 100 S.Ct. at 1765, 1766–1767.

108 S.Ct. at 1858–59.

The problem in *Godfrey* was that, "as a result of the vague construction applied, there was 'no principled way to distinguish [the *Godfrey* case], in which the death penalty was imposed, from the many cases in which it was not.'" *Cartwright,* 108 S.Ct. at 1858 (quoting *Godfrey,* 446 U.S. at 433, 100 S.Ct. at 1767). Following *Godfrey,* the *Cartwright* Court focused on two points: first, that, on its face, the language "especially heinous, atrocious, or cruel" as used in the Oklahoma statute "gave no more guidance than the 'outrageously or wantonly vile, horrible or inhuman'" language in *Godfrey;* second, that the Oklahoma appellate court's conclusion that the facts of Cartwright's case " 'adequately supported the jury's finding' was indistinguishable from the action of the Georgia court in *Godfrey,* which failed to cure the unfet-

tered discretion of the jury and to satisfy the commands of the Eighth Amendment." *Id.* Thus, the Court's holding that the words "especially heinous, atrocious, or cruel" were unconstitutionally vague as applied in *Cartwright* was based upon the failure of the Oklahoma courts to give those words a sufficiently narrowing construction. That holding does not imply that the words "especially heinous, atrocious or cruel" cannot be applied in a manner that comports with the eighth amendment.

■ We read *Godfrey* and *Cartwright* to require that, in order to survive an eighth-amendment vagueness challenge, a sentencing court's consideration of the "especially heinous, atrocious or cruel" aggravating factor must satisfy a three-part test. First, the appellate courts of the state must have narrowed the meaning of the words "heinous, atrocious or cruel" by consistently limiting their application to a relatively narrow class of cases, so that their use "inform[s] [the sentencer of] what [it] must find to impose the death penalty." *Cartwright*, 108 S.Ct. at 1858. Second, the sentencing court must have made either an explicit finding that the crime was "especially heinous, atrocious or cruel" or an explicit finding that the crime exhibited the narrowing characteristics set forth in the state-court decisions interpreting those words.[5] Third, the sentencer's conclusion—that the facts of the case under consideration place the crime within the class

of cases defined by the state court's narrowing construction of the term "heinous, atrocious or cruel"—must not have subverted the narrowing function of those words by obscuring the boundaries of the class of cases to which they apply.

■ A survey of Alabama cases reveals that the first prong of the analysis is satisfied. Since the 1981 case of *Kyzer v. Alabama*, 399 So.2d 330 (Ala.1981), the Alabama appellate courts have confined the application of the "heinous, atrocious or cruel" aggravating factor to "those conscienceless or pitiless homicides which are unnecessarily torturous to the victim." *Kyzer*, 399 So.2d at 334 (citing *State v. Dixon*, 283 So.2d 1 (Fla.1973)).[6] The class of cases that are "unnecessarily torturous to the victim" is not too indefinite to serve the narrowing function mandated by the eighth amendment. *See Proffitt v. Florida*, 428 U.S. 242, 255–56, 96 S.Ct. 2960, 2986, 49 L.Ed.2d 913 (opinion of Stewart, Powell, Stevens, JJ.), *reh'g denied*, 429 U.S. 875, 97 S.Ct. 198, 50 L.Ed.2d 158 (1976). Thus, when Lindsey was sentenced in 1982, the courts of Alabama had already developed and consistently applied a narrowing construction of the term "heinous, atrocious or cruel as compared to other capital offenses."

Second, the trial judge, who is the sentencer under Alabama law, explicitly stated:

> The Court finds the facts to be that the body of the victim, Rosemary Rutland,

5. Where the jury is the sentencer, a recitation that the murder was "especially heinous, atrocious or cruel" would not satisfy the second prong of this test *unless* the jury had been properly instructed regarding the narrow meaning of those words as interpreted by the state courts. Unlike a state-court judge, who is presumed to know and apply the appropriate, narrow construction of the term, an uninstructed lay jury could reasonably conclude that any intentional taking of human life was "especially heinous, atrocious or cruel." *Godfrey*, 446 U.S. at 428–29, 100 S.Ct. at 1764–65; *Cartwright*, 108 S.Ct. at 1859.

6. Indeed, even before 1981, the Alabama courts had significantly narrowed the application of the words "especially heinous, atrocious or cruel." *See Keller v. State*, 380 So.2d 926, 937 (Ala.Cr.App.1979) (determination that crime

was "hateful" held insufficient to support "especially heinous, atrocious or cruel" factor; instructing trial judges to study *State v. Dixon*, *supra*, for proper definition of "heinous, atrocious or cruel" aggravating factor); *Berard v. State*, 402 So.2d 1044, 1050–51 (Ala.Cr.App. 1980) (ordering resentencing where, *inter alia*, trial judge had found that homicides were brutal; held: "That the homicides were 'brutal' fails to conform to [predecessor of § 13A–5–49(8)] which require[d] a finding that the crime was '*especially* heinous, atrocious or cruel.' ... The crime was in fact brutal, but the statute requires more. We have no doubt that had the trial judge applied the wording of subsection (8) he could have supported a proper finding thereunder by the fact that the appellant, after firing all the bullets into the two boys, reloaded the weapon and went back and shot each one again.").

an elderly woman, was found in her home, face down, gagged and her hands bound behind her. It was proved that the victim had been stabbed in the back and shot in the head with a .38 caliber pistol, and that she died as a result of either the stabbing or the shooting, or both. The Court finds that the killing of Rosemary Rutland was outrageously wicked, vile and shockingly evil. *The Court finds from the evidence that the capital offense was especially heinous, atrocious or cruel as compared to other capital offenses.*

*Lindsey v. State,* 456 So.2d 383, 391 (Ala. Cr.App.1983) (Appendix A) (emphasis added). Thus, it is clear that the sentencer made the required finding.

Finally, the sentencing court's determination that this crime was "especially heinous, atrocious or cruel" did not undermine the narrowing accomplished by the *Kyzer* case. The trial court found that the victim was bound, gagged, and assaulted with two weapons. The court's implicit conclusion that the crime was "unnecessarily torturous to the victim" did not subvert the narrowing function of the "heinous, atrocious or cruel" aggravating factor. Thus, the trial judge's order did not result in an unconstitutionally "wanton" or "freakish" imposition of the death penalty. *See Furman v. Georgia,* 408 U.S. 238, 310, 92 S.Ct. 2726, 2763, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring).

### b. *A Godfrey Violation Would Not Require Resentencing*

■ Even if *Cartwright* demonstrated that our original disposition of Lindsey's challenge to the disputed aggravating factor was incorrect, Lindsey would be entitled to no relief. The trial court found four aggravating factors and no mitigating factors. A holding that consideration of the "especially heinous, atrocious or cruel" factor was improper would leave three valid aggravating factors remaining to support Lindsey's sentence. Thus, under the reasoning of *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), *Ford v. Strickland,* 696 F.2d 804 (11th Cir.1983) (in banc), and *Baldwin v. State,*

456 So.2d 117, 125–28 (Ala.Cr.App.1983), *aff'd, Ex Parte Baldwin,* 456 So.2d 129, 140 (Ala.1984), consideration of the "especially heinous, atrocious or cruel" factor, even if improper, was harmless. Therefore, the requested relief is not necessary to prevent injustice.

### 2. The Adamson v. Ricketts Claim

■ The Rule 41–1(b) motion stated that this court should recall its mandate because "new law indicates that the judge's death order overriding the jury's recommended verdict of life [imprisonment] violates the Sixth Amendment, *Adamson v. Ricketts,* 865 F.2d 1011, 1023–29 (9th Cir. Dec. 22, 1988) *(en banc )."* Lindsey's brief in support of the motion stated, however, that "petitioner did not raise in the Court of Appeals any constitutional challenge to the Judge's override of the jury's 11–1 vote for life imprisonment, because of the opinion of the Supreme Court in *Spaziano v. Florida,* 468 U.S. 447 [104 S.Ct. 3154, 82 L.Ed.2d 340] (1984)." His brief in support of the Rule 60(b) motion makes a similar admission. Thus, even if we agreed that Lindsey's *Adamson* claim is meritorious, a question we do not decide, the proper posture in which to raise that claim is a successive petition for habeas corpus—not in a motion pursuant to Fed.R.Civ.P. 60(b) or 11th Cir.R. 41–1(b). Moreover, the papers lodged with this court indicate that Lindsey has presented his *Adamson* claim in a successive petition filed in the district court on May 18, 1989, CA 89–0388–CB. We decline to consider that claim in the context of the instant motions.

### III. THE THIRD HABEAS PETITION

■ Lindsey's third petition for a federal writ of habeas corpus alleges that "his rights under the Sixth Amendment ... have been violated because the jury did not find any statutory aggravating factors even though one of these factors had to be found in order to make the offense death-eligible. *Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir.1988)." As noted above, *see supra,* p. 1511, the district court denied the petition on the alternative grounds that the

petition constituted an abuse of the writ, that the *Adamson* claim was procedurally barred, and that the claim was meritless. *See Lindsey v. Thigpen,* No. 89–0388–CB–C, mem. op. at 3 (S.D.Ala. May 19, 1989).

We agree with the district court both that this petition is an abuse of the writ and that the claim it raises is procedurally barred.[7] Thus, without addressing the merits, we conclude that the certificate of probable cause should not issue, as Lindsey has failed to make a "substantial showing of the denial of a federal right." *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983).

Accordingly, the motion to stay Lindsey's execution, the motion for appointment of new counsel, the motion to recall our mandate, and the applications for certificates of probable cause to appeal are DENIED.

---

**7.** We specifically reject Lindsey's argument that the district court erred by holding that his latest petition for habeas corpus, CA 89–0388, was an abuse of the writ on the grounds that Lindsey's *Adamson* claim could have been raised in his second petition for habeas corpus.

As noted above, *see supra,* pp. 1510–11, the district court treated Lindsey's March 1989 filings, in which Lindsey alleged that his execution would violate *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), as a new petition for habeas corpus, CA 89–0253. That petition was denied on April 12, 1989. Lindsey now asserts that CA 89–0253 was not, strictly speaking, a second petition for habeas corpus. Contrary to Lindsey's current assertion, however, his March 1989 filings explicitly suggested that, if necessary to vest jurisdiction in the district court, those filings should be treated as a new petition for habeas corpus. Moreover, his filings in CA 89–0388 consistently have been styled as pertaining to a third petition for habeas corpus. We find no merit in this belated attempt to ignore the existence of the second petition for habeas corpus or the opportunities it presented for airing the *Adamson* claim.