SHAW, Judge,
concurring specially.
I concur in affirming Mark Anthony Duke’s conviction for the brutal capital murders of Randy Gerald Duke, Dedra Mims Hunt, Chelisa Nicole Hunt, and Chelsea Marie Hunt. Furthermore, based on previous decisions of this Court, specifically, Stallworth v. State, 868 So.2d 1128 (Ala.Crim.App.2001); Hodges v. State, 856 So.2d 875 (Ala.Crim.App.2001); and Waldrop v. State, 859 So.2d 1138 (Ala.Crim.App.2000), I concur to remand this case for the trial court to amend its sentencing order by making specific findings of fact as to why it concluded that the murders were “especially heinous, atrocious, or cruel compared to other capital offenses,” within the meaning of § 13A-5-49(8), Ala.Code 1975. However, I write specially to emphasize that, from my perspective and based on a thorough review of the circumstances surrounding these murders, the evidence was clearly sufficient to support the trial court’s finding that this aggravating circumstance existed, that is, that these murders fell into the category of “those conscienceless or pitiless homicides which are unnecessarily torturous to the victim.” Ex parte Kyzer, 399 So.2d 330, 334 (Ala.1981).
I also write specially to make the following observation. In Ex parte Kyzer, the Alabama Supreme Court noted that “[t]he sole purpose of requiring that the trial judge, as the sentencing authority, make a written finding of the aggravating circumstance is to provide for appellate review of the sentence of death.” 399 So.2d at 338. My examination of this case, and my reexamination of Stallworth, Hodges, and Wal-drop, cause me to question whether a remand, such as the one we order in this case, is always necessary, particularly in a case where a brutal, torturous killing is clearly evidenced in the record and documented in the trial court’s factual findings as part of its sentencing order. By way of example, I note the rationale applied by the United States Court of Appeals for the Eleventh Circuit in Lindsey v. Thigpen, 875 F.2d 1509 (11th Cir.1989):
“We read Godfrey [v. Georgia, 446 U.S. 420 (1980) ] and [Maynard v.] Cartwright[, 486 U.S. 356 (1988),] to require that, in order to survive an eighth-amendment vagueness challenge, a sentencing court’s consideration of the ‘especially heinous, atrocious or cruel’ aggravating factor must satisfy a three-part test. First, the appellate courts of the state must have narrowed the meaning of the words ‘heinous, atrocious or cruel’ by consistently limiting their application to a relatively narrow class of cases, so that their use ‘inform[s] [the sentencer of] what [it] must find to impose the death penalty.’ Cartwright, [486 U.S. at 361-62,] 108 S.Ct. at 1858. Second, the sentencing court must have made either an explicit finding that the crime was ‘especially heinous, atrocious or cruel’ or an explicit finding that the crime exhibited the narrowing characteristics set forth in the state-court decisions interpreting those words.[5] Third, the sentencer’s conclusion — that the facts of the case under consideration *39 place the crime within the class of cases defined by the state court’s narrowing construction of the term ‘heinous, atrocious or cruel’ — must not have subverted the narrowing function of those words by obscuring the boundaries of the class of cases to which they apply.
“A survey of Alabama cases reveals that the first prong of the analysis is satisfied. Since the 1981 case of Kyzer v. Alabama, 399 So.2d 330 (Ala.1981), the Alabama appellate courts have confined the application of the ‘heinous, atrocious or cruel’ aggravating factor to ‘those conscienceless or pitiless homicides which are unnecessarily torturous to the victim.’ Kyzer, 399 So.2d at 334 (citing State v. Dixon, 283 So.2d 1 (Fla.1973)). The class of cases that are ‘unnecessarily torturous to the victim’ is not too indefinite to serve the narrowing function mandated by the eighth amendment. See Proffitt v. Florida, 428 U.S. 242, 255-56, 96 S.Ct. 2960, 2986, 49 L.Ed.2d 913 (opinion of Stewart, Powell, Stevens, JJ.), reh’g denied, 429 U.S. 875, 97 S.Ct. 198, 50 L.Ed.2d 158 (1976). Thus, when Lindsey was sentenced in 1982, the courts of Alabama had already developed and consistently applied a narrowing construction of the term ‘heinous, atrocious or cruel as compared to other capital offenses.’
“Second, the trial judge, who is the sentencer under Alabama law, explicitly stated:
“ ‘The Court finds the facts to be that the body of the victim, Rosemary Rut-land, an elderly woman, was found in her home, face down, gagged and her hands bound behind her. It was proved that the victim had been stabbed in the back and shot in the head with a .38 caliber pistol, and that she died as a result of either the stabbing or the shooting, or both. The Court finds that the killing of Rosemary Rutland was outrageously wicked, vile and shockingly evil. The Court finds from the evidence that the capital offense was especially heinous, atrocious or cruel as compared to other capital offenses.’
“Lindsey v. State, 456 So.2d 383, 391 (Ala.Cr.App.1983) (Appendix A) (emphasis added [in Lindsey v. Thigpen]). Thus, it is clear that the sentencer made the required finding.
“Finally, the sentencing court’s determination that this crime was ‘especially heinous, atrocious or cruel’ did not undermine the narrowing accomplished by the Kyzer case. The trial court found that the victim was bound, gagged, and assaulted with two weapons. The court’s implicit conclusion that the crime was ‘unnecessarily torturous to the victim’ did not subvert the narrowing function of the ‘heinous, atrocious or cruel’ aggravating factor. Thus, the trial judge’s order did not result in an unconstitutionally ‘wanton’ or ‘freakish’ imposition of the death penalty. See Furman v. Georgia, 408 U.S. 238, 310, 92 S.Ct. 2726, 2763, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring).
875 F.2d at 1514-15 (one footnote omitted).
In the present case, the trial court made extensive findings of fact as to the circum *40 stances surrounding the murders. The trial court also made the specific finding that “[t]he capital offense was especially heinous, atrocious or cruel, compared to other capital offenses.” The trial court is presumed to know and to apply the appropriate narrow construction of the § 13A-5-49(8) aggravating circumstance. See Waldrop, supra at 1147-48 (“[W]e presume that the trial court applied the proper law in finding that this aggravating circumstance existed.”). After examining the trial court’s general factual findings regarding the circumstances surrounding the murders, in conjunction with its specific finding of the existence of the § 13A-5-49(8) aggravating circumstance, I am satisfied that the trial court implicitly concluded, based on its factual findings, that these murders were conscienceless or pitiless homicides that were unnecessarily torturous to the victims and that that conclusion did not subvert the narrowing function of the § 13A-5^49(8) aggravating circumstance. See, e.g., Norris v. State, 793 So.2d 847, 853 (Ala.Crim.App.1999) (noting that “it is imperative that we continue to use a ‘consistent and narrow interpretation’ ” of the heinous, atrocious, or cruel aggravating circumstance in order to maintain its constitutionality and listing the following factors as indicative that an offense is “especially heinous, atrocious, or cruel”: (1) physical violence beyond that necessary to cause death; (2) appreciable suffering after the assault; and (3) psychological torture).
However, relying on existing caselaw, which, I believe, is based on the idea that a more thorough sentencing order serves to facilitate the appellate review process, not only in this Court, but especially in other courts, both State and federal, that will inevitably examine the record in this ease for prejudicial error, I concur to remand.
In doing so, however, I must note further that I am aware of no authority (and the main opinion cites none) that requires the trial court to specifically “state what weight the court gave [the] evidence” of Duke’s background and family history. 889 So.2d at 37. The trial court stated that it found that “the defendant’s background and family history has certain mitigating aspects which the Court considered in mitigation.” The evidence submitted by the accused as a nonstatutory mitigating circumstance is not required to be weighed as a mitigating circumstance by the trial court; although consideration of all mitigating circumstances is required, the decision whether a particular mitigating circumstance is proven and the weight to be given it rests with the trial court. See Haney v. State, 603 So.2d 368, 389 (Ala.Crim.App.1991). The trial court in the present case clearly considered the evidence of Duke’s background and family history, and it found that that evidence was, to a certain extent, mitigating. The sentencing order indicates that the trial court did not find that the nonstatutory mitigating circumstance and the two statutory mitigating circumstances that it found to exist were sufficiently mitigating so as to require the imposition of a sentence of life in prison without parole. The trial court’s conclusion in that regard is clearly supported by the evidence. I fail to see how the trial court’s further explanation as to the exact weight it gave to the nonstatu-tory mitigating circumstance will serve to facilitate appellate review in this Court or in any other reviewing court.

On Return to Remand

WISE, Judge.
The appellant, Mark Anthony Duke, was convicted of capital murder in connection with the deaths of Randy Gerald Duke, Dedra Mims Hunt, Chelisa Nicole Hunt, and Chelsea Marie Hunt. We affirmed *41 Duke’s conviction but remanded the case for the circuit court to correct several deficiencies in the sentencing order. See Duke v. State, 889 So.2d 1 (Ala.Crim.App.2002). The circuit court has complied with our instructions and has submitted an amended sentencing order.
After we remanded this case to the circuit court, the United States Supreme Court released Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)— two cases that dramatically impacted death-penalty cases throughout the United States. We requested that Duke and the attorney general brief the issue of the applicability of Ring to Duke’s conviction and death sentence.[1] We now address those arguments.[2]
I.

Ring v. Arizona

In Ring, the United States Supreme Court applied its earlier holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to death-penalty cases and held that “[c]api-tal defendants ... are entitled to a jury determination on any fact on which the legislature conditions an increase in their maximum punishment.” Ring, 536 U.S. at 589, 122 S.Ct. at 2432.
Duke argues that imposition of the death penalty in Alabama requires fact-finding by a jury relating to both the existence of aggravating circumstances and the weighing of the aggravating circumstances against the mitigating circumstances. Because only the trial judge made these findings and the jury was not given the opportunity to return a verdict on any of the aggravating circumstances in his case, he argues that the Supreme Court’s holding in Ring renders him ineligible for the death penalty. Duke also argues that because the jury was instructed that its verdict and findings were advisory, no reliable finding as to aggravating circumstances could be made by the jury. Duke further argues that the indictment against him is void because, he says, it failed to specify the aggravating circumstances that supported the capital offense. Finally, Duke argues that both Alabama and federal law condemn the imposition of the death penalty by a judge, rather than by a jury.
The State counters by arguing that Duke’s death sentence complies with Ring because the jury found at the guilt phase that Duke had committed a capital offense, thus making him eligible for the death sentence. Accordingly, the circuit court had the discretion under Ring to impose either the death sentence or a lesser sentence, with or without the approval of the jury.
In several recent decisions, both this Court and the Alabama Supreme Court have agreed with the State’s rationale that Ring did not invalidate Alabama’s law, which vests the ultimate sentence determination in the hands of the trial judge and not a jury. See, e.g., Ex parte Hodges, 856 So.2d 936 (Ala.2003);
*42 Ex parte Waldrop, 859 So.2d 1181 (Ala.2002); Turner v. State, [Ms. CR-99-1568, November 22, 2002] — So.2d - (Ala.Crim.App.2002); Stallworth v. State, 868 So.2d 1128 (Ala.Crim.App.2001), opinion on return to second remand, 868 So.2d at 1178. In each of these cases, we recognized the narrowness of the holding in Ring, noting that “[t]he Ring Court held that any aggravating circumstance that increased a sentence to death must be proved to a jury beyond a reasonable doubt”; however, we noted that the Ring Court “did not reach the question whether judicial sentencing or judicial override was constitutional.” Stallworth v. State, 868 So.2d at 1183 (opinion on return to second remand). Indeed, we quote the following language from a footnote in Ring:
“Ring’s claim is tightly delineated: He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him. No aggravating circumstance related to past convictions in his case; Ring therefore does not challenge Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which held that the fact of prior conviction may be found by the judge even if it increases the statutory maximum sentence. He makes no Sixth Amendment claim with respect to mitigating circumstances. See Apprendi v. New Jersey, 530 U.S. 466, 490-491, n. 16, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (noting ‘the distinction the Court has often recognized between facts in aggravation of punishment and facts in mitigation’ (citation omitted [in Ring ])). Nor does he argue that the Sixth Amendment reqidred the jury to make the ultimate determination whether to impose the death penalty. See Proffitt v. Florida, 428 U.S. 242, 252, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (plurality opinion) (‘[I]t has never [been] suggested that jury sentencing is constitutionally required.’). He does not question the Arizona Supreme Court’s authority to reweigh the aggravating and mitigating circumstances after that court struck one aggravator. See Clemons v. Mississippi, 494 U.S. 738, 745, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). Finally, Ring does not contend that his indictment was constitutionally defective. See Apprendi, 530 U.S. at 477, n. 3, 120 S.Ct. 2348 (Fourteenth Amendment ‘has not ... been construed to include the Fifth Amendment right to “presentment or indictment of a Grand Jury” ’).”
536 U.S. at 597-98 n. 4, 122 S.Ct. at 2437 n. 4.
Here, the jury in the guilt phase entered a verdict finding Duke guilty of capital murder. Duke’s case, however, differs from that of Waldrop, Hodges, Turner, and Stallworth because at the time Duke committed these offenses, the fact that the defendant “intentionally caused the death of two or more persons by one act or pursuant to one scheme or course of conduct” did not, of itself, constitute an aggravating circumstance.[3] However, this does not require that Duke’s death sentence be set aside. The State argues that once a jury returns a verdict finding the defendant guilty of capital murder, that defendant becomes “death-eligible.” It is unnecessary to address the State’s argument because the jury’s 10-2 recommendation of death during the sentencing phase indicated that it must have found the existence of the aggravating circumstance that the offense was “especially heinous, atrocious, or cruel compared to other capital offenses.” *43 § 13A-5-49(8), AIa.Code 1975. This was the only aggravating circumstance the court instructed the jury on. (R. 2663, 2668.) Throughout the court’s penalty-phase instructions, the court repeatedly instructed the jury that it could not proceed to a vote on whether to impose the death penalty unless it first found the existence of at least one aggravating circumstance. (R. 2645, 2646, 2648, 2649, 2669, 2673, 2674, 2688.) One such example is as follows:
“In order to consider an aggravating circumstance, it is necessary that the jury unanimously agree upon its existence. All 12 jurors must be convinced beyond a reasonable doubt that an aggravating circumstance exists in order for any of you to consider that aggravating circumstance in determining what the sentence should be.”
(R. 2673.) Thus, the jury’s 10-2 vote recommending death established that the jury unanimously found the existence of the “especially heinous, atrocious, or cruel” aggravating circumstance,[4] giving the trial judge the discretion to sentence Duke to death. See § 13A-5-46(e)(l)-(3), Ala. Code 1975; see also Ex parte Slaton, 680 So.2d 909, 927 (Ala.1996), cert. denied, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997).
Duke also argues, in relation to the application of Ring, that his indictment was void because it failed to include in the indictment the aggravating circumstances the State intended to prove. This Court rejected a similar claim in Stallworth v. State, 868 So.2d 1178 (opinion on return to second remand). We stated:
“In Poole v. State, 846 So.2d 370 (Ala.Crim.App.2001), we held that, although Apprendi [v. New Jersey, 530 U.S. 466 (2000)] required that the facts that increased a sentence above the statutory maximum must be submitted to a jury, thosfe facts did not have to be alleged in the indictment. Recently, the Alabama Supreme Court adopted our holding in Poole. See Hale v. State, 848 So.2d 224 (Ala.2002).
“Also, the holdings, in Poole and Hale are consistent with prior caselaw, which holds that aggravating circumstances do not have to be alleged in the indictment. See Ex parte Lewis, 811 So.2d 485 (Ala.2001), and Dobard v. State, 435 So.2d 1338 (Ala.Crim.App.1982).”
868 So.2d at 1186.
Based on the foregoing, we conclude that Duke’s claim in this respect is not supported by Alabama law.
Duke also argues that Ring requires penalty-phase relief when the jury is told that its verdict is “advisory” or merely a “recommendation.” Contrary to Duke’s contention, Ring does not address the advisory nature of a jury’s sentencing recommendation. Duke’s jury was properly informed that under Alabama law, its verdict was an advisory one. See § 13A-5-46, Ala.Code 1975. Thus, the jury was not misled regarding its role in the sentencing decision. See Caldwell v. Mississippi, 472 U.S. 320, 328-29, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); Ex parte Taylor, 666 So.2d 73, 88 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996).
*44 II.
As required by § 13A-5-53, Ala.Code 1975, we will now address the propriety of Duke’s conviction and sentence of death.
Duke was indicted and convicted of murdering two or more people “by one act or pursuant to one scheme or course of conduct.” § 13A-5-40(a)(10), Ala.Code 1975. The jury, by a vote of 10 to 2, recommended that Duke be sentenced to death.
The record reflects that Duke’s sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. See § 13A-5-53(b)(l), Ala.Code 1975.
The circuit court found that the aggravating circumstance outweighed the mitigating circumstances and mandated that Duke be sentenced to death. The court found one aggravating circumstance — that the murders were especially heinous, atrocious, or cruel when compared to other capital offenses, see § 13A-5-49(8), Ala. Code 1975. The circuit court found the existence of two statutory mitigating circumstances: (1) that Duke had no significant history of prior criminal activity, see § 13A-5-51(l), Ala. Code 1975; and (2) that Duke was 16 years old at the time of the offenses, see § 13A-5-51(7), Ala.Code 1975. Additionally, the circuit court found the existence of a nonstatutory mitigating circumstance — that Duke experienced significant parental neglect and/or abuse, particularly by his father.
With regard to the application of the aggravating circumstance that the murders were especially heinous, atrocious, or cruel, the circuit court made the following findings of fact on remand:
“Four people were killed in this cause, namely: Defendant’s father, Randy Duke; Randy Duke’s girlfriend, Dedra Hunt; and her two small girls, Chelsea Hunt and Chelisa Hunt, ages 6 and 7 years, respectively. Their murders were premeditated, callous and extremely cruel.
“The Court re-adopts its earlier factual findings. Those findings revealed, inter alia:
“Defendant was refused the use of his father’s truck, prompting his decision to kill his father. Defendant obtained the assistance of an acquaintance, co defendant Michael Brandon [Samra]. The two of them planned to go into Duke’s father’s house where Defendant was to kill his father and the two little girls and [Samra] was to shoot Dedra Hunt. Defendant said that they could not leave any witnesses.
“Defendant and codefendant [Samra] each went inside the house with a gun. All four victims were in a room when Defendant shot his father hitting him in the right cheek. Defendant shot at his father again but missed possibly because his father threw an artificial cat at Defendant in a defensive move. Defendant shot a third time at his father’s head. Defendant’s father pleaded with Defendant not to kill him, asking what the father might have done wrong. Before he again shot his father, Defendant said he would see his father in hell. This shot proved to be fatal. In addition to the two gunshot wounds, Mr. Duke sustained bruises, scrapes and some knife wounds.
“While Defendant was shooting his father, codefendant [Samra] shot the father’s girlfriend, Ms. Hunt, on the side of her face. Not killing her at that time, she ran upstairs. While the first of the shootings occurred, the two little girls also ran upstairs. Ms. Hunt first went to a bedroom and then to a bathroom where she locked herself in. Chelisa was also in the bathroom. Defendant came upstairs and kicked a hole in the *45 door and unlocked the door. The mother pleaded for Defendant not to kill her and as she struggled, he shot her in the head which proved to be a fatal shot. Defendant then got Chelisa, put a knife to her throat and said that it would only-hurt for a second and proceeded to cut her throat. Chelisa lived only for a matter of minutes after her throat was cut. Defendant then went to the other little girl’s bedroom and found Chelsea under the bed. Defendant grabbed her with Chelsea pleading with Defendant not to hurt her. Chelsea struggled as Defendant held a knife and tried to cut her throat. She had cuts on her face and numerous defensive wounds to her hands. Defendant told codefendant [Samra] to help and gave [Samra] the knife while Defendant held Chelsea down by her arms. Codefendant [Sam-ra] cut Chelsea’s throat 2 to 3 times.
“Chelsea died in a matter of minutes after her throat was cut. She had massive blood loss and aspirated blood. As seen above, Ms. Hunt had to have seen Mr. Duke get shot just prior to her being shot. The two little girls went through the shootings of Mr. Duke and their mother and although we will never know their thoughts, they certainly had to be terrified, probably not only for their mother, but for themselves, especially when they saw that a knife was about to be used on them. Although no one will ever know the exact thoughts of the victims, it would appear that the mother probably expected to be killed and expected that her girls might be killed as well. It is unimaginable the physical pain and mental anguish experienced by the victims during the brutal attack. All the killings of the victims were in a very cruel manner and unnecessarily torturous. Clearly, the commission of these murders by the Defendant was especially heinous, atrocious or cruel, compared to other capital offenses.”
In Taylor v. State, 808 So.2d 1148 (Ala.Crim.App.2000), aff'd, 808 So.2d 1215 (Ala.2001), cert. denied, 534 U.S. 1086, 122 S.Ct. 824, 151 L.Ed.2d 705 (2002), we addressed the application of this aggravating circumstance. We find the following language to be particularly relevant to this case:
“The Alabama appellate courts’ interpretation of ‘especially heinous, atrocious, or cruel’ has passed muster under the Eighth Amendment because those courts have consistently defined the term to include only ‘those conscienceless or pitiless homicides which are unnecessarily torturous to the victim.’ Ex parte Clark, [728 So.2d 1126 (Ala.1998)], citing, Lindsey v. Thigpen, 875 F.2d 1509 (11th Cir.1989). The Alabama appellate courts have considered the infliction of psychological torture as especially indicative that the offense was ‘especially heinous, atrocious or cruel.’ Thus, the mental suffering where a victim witnesses the murder of another and then realizes that soon he or she will also be killed, has been found to be sufficient to support a finding of this aggravating circumstance. Norris v. State, 793 So.2d 847, 854 (Ala.Cr.App.1999). As the trial judge pointed out in his sentencing order, two of the victims here witnessed Taylor kill another victim. Both tried to run and hide, but were captured. Both begged and pleaded for their lives; one offering money and property, the other pleading for the sake of her children. Both were deliberately and methodically executed with a gunshot to the head as they pleaded for their lives. These murders were not accomplished in a rapid-fire manner; there was sufficient time between the three murders for the next victim to be placed in significant fear for his or her *46 life, and the evidence is clear that each was well aware of what was about to happen.”
808 So.2d at 1169.
Here, just as in Taylor, there was sufficient time in between each of the murders for the remaining victims to realize their own fates. Certainly, even Randy Duke — the first to die- — experienced mental suffering upon realizing that his own son intended to kill him. Likewise Dedra Hunt suffered mental anguish upon realizing that Duke intended to kill not only her, but also her two daughters. Finally, each of the two Hunt girls suffered mental anguish upon witnessing their mother’s death, and the realization that they, too, were about to die. We further note that this Court found the manner in which these victims died to be “especially heinous, atrocious, or cruel” in our review of the appeal of Duke’s codefendant, Michael Brandon Samra. See Samra v. State, 771 So.2d 1108, 1121 (Ala.Crim.App.1999), aff'd, 771 So.2d 1122 (Ala.), cert. denied, 531 U.S. 933, 121 S.Ct. 317, 148 L.Ed.2d 255 (2000). Given these circumstances, the circuit court properly concluded that the murder of the four victims was “especially heinous, atrocious, or cruel.” See Ex parte Clark, 728 So.2d 1126, 1140 (Ala. 1998).
Moreover, the fact that the circuit court found the existence of but one aggravating circumstance and three mitigating circumstances does not indicate that the court’s decision to sentence Duke to death was erroneous. In Bush v. State, 695 So.2d 70 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997), this Court stated:
“ ‘[T]he sentencing authority in Alabama, the trial judge, has unlimited discretion to consider any perceived mitigating circumstances, and he can assign appropriate weight to particular mitigating circumstances. The United States Constitution does not require that specific weights be assigned to different aggravating and mitigating circumstances. Murry v. State, 455 So.2d 53 (Ala.Cr.App.1983), rev’d on other grounds, 455 So.2d 72 (Ala.1984). Therefore, the trial judge is free to consider each case individually and determine whether a particular aggravating circumstance outweighs the mitigating circumstances or vice versa. Moore v. Ballccom, 716 F.2d 1511 (11th Cir.1983). The determination of whether the aggravating circumstances outweigh the mitigating circumstances is not a numerical one, but instead involves the gravity of the aggravation as compared to the mitigation.’
“Clisby v. State, 456 So.2d 99, 102 (Ala.Cr.App.1983).”
695 So.2d at 94. As the Alabama Supreme Court stated in Ex parte Cook, 369 So.2d 1251, 1257 (Ala.1978): “We can readily envision situations where several aggravating circumstances may not be sufficient to outweigh only one mitigating circumstance and, on the other hand, where numerous mitigating circumstances may be present but opposed to one aggravating circumstance so outrageous as to justify the death penalty.” Accord Carr v. State, 640 So.2d 1064, 1074-75 (Ala.Crim.App.1994); Maywood v. State, 548 So.2d 512, 514 (Ala.Crim.App.), aff'd, 548 So.2d 516 (Ala.1988), cert. denied, 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 271 (1989).
We find this to be the case here. The revised sentencing order indicates that the circuit court considered all of the mitigating evidence Duke offered, but determined that that mitigation was outweighed by the “heinous, atrocious, and cruel” method in which he killed his father and three other individuals simply because *47 Duke’s father had refused Duke’s request to borrow his father’s truck. The sentencing order shows that the court weighed the aggravating circumstances and the mitigating circumstances and correctly sentenced Duke to death. Its decision is supported by the record, and we agree with its findings.
Section 13A-5-53(b)(2) requires us to weigh the aggravating and mitigating circumstances independently to determine the propriety of Duke’s death sentence. After independently weighing the aggravating circumstances and the mitigating circumstances, we find that the death sentence is appropriate in this case.
As required by § 13A-5-53(b)(3), Ala. Code 1975, we must determine whether Duke’s death sentence was disproportionate or excessive when compared to the penalties imposed in similar cases. Duke killed four people pursuant to a common scheme or plan. Similar crimes have been punished by death on numerous occasions, including Duke’s codefendant, Michael Brandon Samra. See, e.g., Samra v. State, 771 So.2d at 1121; Taylor v. State, 666 So.2d 36 (Ala.Crim.App.), opinion on return to remand, 666 So.2d 71 (Ala.Crim.App.1994), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996); Holladay v. State, 549 So.2d 122 (Ala.Crim.App.1988), aff'd, 549 So.2d 135 (Ala.), cert. denied, 493 U.S. 1012, 110 S.Ct. 575, 107 L.Ed.2d 569 (1989); Siebert v. State, 555 So.2d 772 (Ala.Crim.App.), aff'd, 555 So.2d 780 (1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990).
Finally, as required by rule 45A, Ala. RApp.P., we have searched the record for any error that may have adversely affected Duke’s substantial rights and have found none. Duke’s death sentence for the murders of Randy Gerald Duke, Dedra Mims Hunt, Chelisa Nicole Hunt, and Chelsea Marie Hunt is due to be, and is hereby, affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and SHAW, JJ., concur.

"5 Where the jury is the sentencer, a recitation that the murder was 'especially heinous, atrocious or cruel' would not satisfy the second prong of this test unless the jury had been properly instructed regarding the narrow meaning of those words as interpreted by the state courts. Unlike a state-court judge, who is presumed to know and apply the appropriate, narrow construction of the term, an uninstructed lay jury could reasonably conclude that any intentional taking of human life was 'especially heinous, atrocious or cruel.’ Godfrey, 446 U.S. at 428-29, 100 S.Ct. at 1764-65; Cartwright, [486 U.S. at 364,] 108 S.Ct. at 1859.”

. Atkins addresses the rights of mentally retarded persons sentenced to death. Nothing in the record suggests that Duke was mentally retarded. Thus, because Atkins had no application to this case, we did not request that the parties address the applicability of Atkins.

. Because Rule 45A, Ala.R.App.P., requires this Court to search the record for any plain error and because Duke's case was not final when Ring was released, we have applied Ring to this appeal. See Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

. Section 13A-5-49, Ala.Code 1975, was amended, effective September 1, 1999, to make this an aggravating circumstance. See § 13A-5-49(9), Ala.Code 1975.

. We note that Ring requires only that the jury unanimously find the existence of ah aggravating circumstance in order to make the defendant death-eligible. Alabama ' law does not require that the jury’s advisory ver-diet be unanimous before it can recommend death. See § 13A-5-46(f), Ala.Code 1975. Nothing in Ring supports Duke’s claim that the jury's advisory verdict be unanimous.